In re Owner-Trainer Topper.

(No. 1531—Decided March 16, 1959.)

*Mr. Mark McElroy*, attorney general, for appellant Ohio State Racing Commission.

*Mr. C. U. Ahl*, for appellee A. P. Topper.

GUERNSEY, J.  This is an appeal on questions of law by the Ohio State Racing Commission from a judgment of the Court of Common Pleas of Crawford County in an appeal from an order of the commission purporting to indefinitely suspend the licenses previously granted by the commission to A. P. Topper as an owner and trainer of race horses.  The Common Pleas Court found that the order of the commission was not supported by reliable, probative, or substantial evidence and was not in accordance with law and the judgment of the court was that the order of the commission suspending the license be reversed, set aside, and held for naught, and that Topper be restored to all rights and privileges which he had lost by reason of the order of suspension.

The evidence is undisputed that Bright Sun, a horse owned by Topper, won the first race on May 2, 1958, the first day of the season, at Painesville Raceway; that, at approximately 8:40 p. m., he was taken from the racetrack to the retention area for the purpose of permitting Dr. Cragg, the track veterinarian, to obtain saliva and urine samples; that the saliva sample was immediately obtained, but the veterinarian was unable to obtain a urine sample prior to about 11:50 p. m., when the horse was removed from the retention barn and returned to its own stable by its groom acting pursuant to the order of Topper, his employer; that under the directions of the veterinarian his assistants tried unsuccessfully several times to obtain a urine sample by holding a jar with their hands and by holding a jar placed between the tines of a three-tine pitchfork beneath the horse; that the usual implement used to obtain

such samples, *i. e.,* an aluminum tube fixed to the end of a wooden handle, which tube drained its contents into a glass bottle affixed to its base, was, through oversight, not available on this first day of the racing season; that, although the horse's own attendants were permitted to "cool out" and otherwise attend to the horse so long as their activities did not interfere with the obtaining of the required samples, during attempts to obtain the urine sample and at the end of the cooling out process the horse was placed in a stall which had large cracks in its walls where the horse was exposed to drafts and could see and hear the activity on the racetrack and hear horses being loaded and unloaded from trucks in the vicinity of the retention area; that Topper stayed in the grandstand until the last race was over and was not in the retention area at any time until immediately prior to the time Bright Sun was removed to his own stable; that before Bright Sun was removed Topper inquired of Dr. Cragg whether he would send one of his assistants or himself go with Bright Sun to its own stall for the purpose of attempting to there obtain the urine sample; that the veterinarian then declined to send an assistant or himself go with the horse and advised Topper that he, the veterinarian, did not consent to his removal of the horse from the retention area; that Bright Sun's driver, or groom, were at all times present in the retention area while the horse was there, but were excluded from the stall in which Bright Sun was placed, and at no time interfered in any manner with the attempts to obtain the urine sample; and that Dr. Cragg reported the incident to the Ohio State Racing Commission which cited Topper to appear on the following charge:

"In that the said owner-trainer A. P. Topper on or about May 2, 1958, at Painesville Raceway in Painesville, Ohio, did remove from the Ohio State Racing Commission retention area the horse 'Bright Sun,' winner of the first race on May 2, 1958, at such race track, before a urine specimen had been obtained from the said horse without the consent of and over the objection of Dr. Alan P. Cragg, D. V. M., Ohio State Racing Commission veterinarian, such action on the part of A. P. Topper being in direct violation of Rule 261, Ohio Rules of

Racing, pertaining to interference with the taking of any specimen and amounting to improper practice and conduct detrimental to the best interests of racing within the meaning of Rule 68, Ohio Rules of Racing.''

At the hearing, requested by Topper, in addition to testimony bearing on the evidence heretofore mentioned, Dr. Cragg testified, among other things, that in most cases winning horses are retained in the retention area until urine samples are obtained, but that ''horses that pose a problem, when I have the men available, we will return to the barn in an effort to obtain a urine sample''; that the conditions and surroundings of the retention area would make some horses very nervous, but that he did not know whether Bright Sun was a nervous horse; that it is more difficult to obtain a urine specimen from a nervous horse than one which is not; that, after he caused the horse to be removed, Topper told him that he thought the horse was being kept an unreasonable time and that he was afraid that something would happen to the horse, that it would get sick or something; that he told Topper before he took the horse that he had four horses in the retention area and three men working for him, that he would send a man with Bright Sun to Bright Sun's stable as soon as he had one free; that if a horse is kept in a drafty place especially while it is in a warm and heated condition it is subject to be tied up, that it can catch a cold and get congestion of the lungs, that it can become muscle sore and muscle stiffened; that it is a fact and ''well known and an accepted piece of knowledge from veterinarians in general that if a horse has not passed urine in two and a half hours that the stimulant from the urine goes back into the bloodstream of the horse and in some cases will cause a horse to tie up in their kidneys and also may cause serious other injuries''; that the horse's own stall was probably much tighter than those in the retention area without cracks where a draft might blow through; and that a couple of nights following the incident in question Bright Sun was in another race, and the veterinarian went with the horse to its own stall and got a sample in a time which may have been about two minutes.

In addition to testimony bearing on the undisputed evi-

dence hereinbefore mentioned. Topper testified, among other things, that he told the veterinarian before he took the horse that the horse might tie up or catch a cold; that the veterinarian advised him that he did not have a man available to go with the horse to his own stable; that the veterinarian told him that he would keep the horse in the retention area as long as he wanted to; that he took the horse because he thought the horse might "tie up or something would happen to the horse that he wouldn't be any account the rest of the season"; that he had had experience with other horses tying up for not urinating for various reasons; and that at the time in question he was not familiar with Rule 261 of the commission.

On this evidence the commission found Topper in violation of Rules 261 and 68 and made the following order:

"Upon consideration of the foregoing, it is the order of the Ohio State Racing Commission that owner-trainer A. P. Topper stands suspended indefinitely for violation of Rules 261 and 68, Ohio Rules of Racing."

Although this order purports to suspend Topper, and not his licenses, the parties and the lower court treated it as a suspension of licenses, and we will do likewise.

At the hearing of the appeal in the Common Pleas Court the appellant moved for leave to introduce the testimony of one Dr. Neikirk, a veterinarian, as newly discovered evidence, which motion was allowed. Dr. Neikirk testified as an expert, and his testimony, to the extent it had probative value, was merely cumulative to the uncontradicted testimony of Dr. Cragg adduced at the hearing before the commission.

The appellant in this court assigns error as follows:

1. The lower court erred in finding that the order of the racing commission was not supported by reliable, probative and substantial evidence and was not in accordance with law.

2. The lower court erred in admitting the testimony of Dr. George Neikirk.

The jurisdiction of this court in an appeal by an administrative agency from a judgment of a Common Pleas Court in an appeal from an order of the administrative agency is limited and controlled by the provisions of Section 119.12 of the Revised

Code. The Supreme Court held in the case of *Katz* v. *Dept. of Liquor Control*, 166 Ohio St., 229, 141 N. E. (2d), 294:

"Under the provisions of Section 119.12, Revised Code, as amended in 1953 (125 Ohio Laws, 488), an administrative agency may appeal from a judgment of the Court of Common Pleas, rendered on appeal from a decision of such agency, only upon questions of law relating to the constitutionality, construction or interpretation of statutes and rules and regulations of the agency, but when such appeal is perfected the reviewing court has jurisdiction to review and determine the correctness of the judgment of the Court of Common Pleas that the order of the agency is not supported by any reliable, probative and substantial evidence in the entire record."

It will be noted that the language of Section 119.12 bestowing this jurisdiction on the appellate court is that "in such appeal the court *may* also review and determine the correctness of the judgment of the Court of Common Pleas" etc. This language, it will be noted, is permissive and not mandatory. It therefore appears, under the authority of the *Katz case, supra,* that if the racing commission has perfected its appeal with respect to the second assignment of error, above quoted, then this court *may* also review and determine the correctness of the judgment of the Common Pleas Court that the order of the racing commission is not supported by any reliable, probative and substantial evidence in the entire record. The second assignment of error involves the question as to whether the Common Pleas Court could, under a proper construction or interpretation of Section 119.12, Revised Code, admit the testimony of Dr. George Neikirk as newly discovered evidence, and a notice of appeal, perfecting an appeal on such question, was filed in due time after judgment.

That part of Section 119.12, Revised Code, limiting the admission of newly discovered evidence in the trial court reads:

"* * * Unless otherwise provided by law, the court may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency."

A Common Pleas Court has discretion as to what additional evidence it will admit as newly discovered evidence. In *Andrews* v. *Board of Liquor Control,* 164 Ohio St., 275, 131 N. E. (2d), 390, Judge Stewart said at page 279 of his opinion:

"The appeal in the Common Pleas Court can not be a trial *de novo,* for the reason that the court is limited to an examination of the record of the hearing before the administrative agency and such additional evidence as the court, in its discretion, may allow to be presented upon the theory that it is newly discovered."

However, this court need not determine whether the Common Pleas Court abused its discretion in admitting the testimony of Dr. Neikirk, for the testimony, so far as it had probative value, was entirely cumulative of the uncontradicted testimony adduced before the racing commission. The error, if any, in admitting such testimony could not have been prejudicial to the appellant racing commission. Appellant's second assignment of error is therefore without merit.

Since an appeal on questions of law relating to the construction or interpretation of Section 119.12, Revised Code, was perfected, we are permitted to *review and determine the correctness* of the judgment of the Court of Common Pleas.

In reviewing and determining the correctness of the judgment of the Common Pleas Court we must follow the same procedure enjoined on the Common Pleas Court in arriving at its determination. As the Supreme Court held in *Andrews* v. *Board of Liquor Control, supra* (164 Ohio St., 275):

"1. Under Section 154-73, General Code, as amended in 1951 (Section 119.12, Revised Code), in an appeal from the Board of Liquor Control to the Court of Common Pleas of Franklin County, that court must give consideration to the entire record before the Board of Liquor Control, including all evidence offered before the board, and such additional evidence as the court may admit, and must appraise all such evidence as to the credibility of witnesses, the probative character of the evidence and the weight to be given it, and, if from such a consideration it finds that the board's order is not supported by reliable, probative and substantial evidence and is not in

accordance with law, the court is authorized to reverse, vacate, or modify the order of the board."

We cannot, of course, admit or consider any additional evidence and are limited in our consideration and determination to the same evidence before the Common Pleas Court.

The authority of the racing commission to adopt the rules herein involved, or to require the licensing of an owner and trainer of race horses, is not raised by the parties in this case, and we will, therefore, concern ourselves only with the evidentiary question as to the violation of the rules mentioned in the charge.

Rule 261 of the racing commission provides in pertinent part as follows:

"* * * a refusal to allow or any act or threat to impede or prevent or otherwise interfere with, the taking of any such specimen shall subject the person or persons guilty thereof to immediate suspension by the stewards, and the matter shall be referred to the commission for such further penalty as it in its discretion may determine."

Rule 68 provides:

"Any license issued by the commission may be revoked for corrupt, fraudulent or improper practice on the part of the holder, or for conduct detrimental to the best interests of racing after a proceeding before the commission."

Even without considering the testimony of Dr. Neikirk in the Common Pleas Court, the only reliable, probative and substantial evidence in the record is to the effect that for more than three hours immediately following the running of the first race Mr. Topper did not refuse to allow nor did he commit any act or threat to impede or prevent or otherwise interfere with the taking of a urine specimen; that, to the contrary, he was not in the retention area during that time; that if Bright Sun continued to remain in the retention area without urinating a definite possibility existed that, for such reasons, physical injuries would occur to such horse which would either diminish or entirely ruin his suitability and value as a race horse either temporarily or permanently; that the methods which had been used to cause the horse to urinate during the more than three

hours he had been in the retention area had not been successful and there was nothing to indicate that if he were retained for even a short period beyond such time any different or successful methods would be used; and that any literal violation of Rule 261 by Mr. Topper occurred only in view of such circumstances and after the expiration of a reasonable period of retention. To conclude, under these facts, as the racing commission no doubt did, that a literal violation of the rule is a violation which subjects the offender to the penalties of the rule, would be giving the rule an interpretation and application which would be unreasonable, arbitrary, discriminatory and, in this case, confiscatory, and would result in the rule itself being considered invalid. See 1 Ohio Jurisprudence (2d), 482, Administrative Law and Procedure, Section 80, and authorities therein cited. We will neither interpret nor apply the rule in a manner resulting in its invalidity so long as it may be interpreted and applied in a reasonable and valid manner.

We believe this to be a case coming directly within the provisions of the last paragraph of Section 119.11, Revised Code, wherein the Legislature has recognized the necessity for an exception, in certain factual situations, from the literal interpretation and application of a rule, specifically:

"Any order of the court in reviewing on appeal an order of any agency in adopting, amending, or rescinding a rule shall be final unless an appeal is taken therefrom, *but no person affected thereby shall be precluded from attacking at any time the reasonableness or legality of any rule in its application to a particular set of facts or circumstances.*" (Emphasis added.)

See, also, *Mastroianni* v. *Board of Liquor Control*, 98 Ohio App., 500, 130 N. E. (2d), 380.

We conclude therefore that there was no reliable, probative and substantial evidence, under the facts or circumstances of this case, to support the order of the racing commission suspending Mr. Topper's licenses for a violation of Rule 261. Such rule not having been violated, and there being no independent evidence of a violation of Rule 68, we are likewise of the opinion that there is no support for the commission's finding that Rule 68 was also violated.

For the reasons mentioned the judgment of the Common Pleas Court must be, and hereby is, affirmed.

*Judgment affirmed.*

YOUNGER, P. J., and MIDDLETON, J., concur.