OHIO STATE BOARD OF PHARMACY, APPELLANT AND CROSS-APPELLEE, *v.* POPPE, APPELLEE AND CROSS-APPELLANT.

(No. CA87-08-065—Decided May 31, 1988.)

*Anthony J. Celebrezze, Jr.,* attorney general, *Yvette M. McGee* and *Christopher J. Costantini,* for the State Board of Pharmacy.

*McShane, Breitfeller & Witten* and *Alan C. Witten,* for C. David Poppe.

*Per Curiam.* This is an appeal and a cross-appeal from a judgment of the Court of Common Pleas of Clermont County which upheld only a portion of the Ohio State Board of Phar-

macy's findings and attendant disciplinary action agaisnt C. David Poppe, a pharmacist.

In a letter dated March 10, 1986, the State Board of Pharmacy ("the board") formally accused C. David Poppe of nine violations of Ohio statutes in connection with his operation of Dave Poppe's Medicine Shop. The board accused Poppe of one count of dispensing a drug other than that prescribed, one count of purchasing a dangerous drug from someone other than a registered wholesale distributor of dangerous drugs, and seven counts of receiving, holding, offering for sale, or selling misbranded drugs. At Poppe's request, a hearing on the charges was conducted on June 23, 1986.

At the outset of the hearing, count four, which alleged Poppe received, held and offered for sale certain misbranded drugs, was dismissed because it was duplicated in counts seven and eight. Immediately thereafter, the board's representatives presented evidence aimed at establishing the remaining eight counts and Poppe followed that presentation with evidence in his own defense.

After hearing the evidence, the board found Poppe had committed the violations alleged in counts one, two, three, six, seven, eight and nine of the charging letter. Based on all seven of its findings, the board suspended Poppe's pharmacist identification card for twenty-four months and imposed a $28,000 fine. It suspended eighteen months and $23,000 of the fine on certain conditions. Poppe appealed the board's decision to the Court of Common Pleas of Clermont County.[1]

After receiving briefs and hearing oral argument, the common pleas court took the case under advisement. On May 20, 1987, it filed a decision affirming the board's determination in part and reversing it in part. Specifically, the court decided the board's first and second findings were supported by reliable, probative and substantial evidence but that its remaining findings, three, four, five, six and seven, were not. Consequently, it modified the board's sanctions. This appeal and cross-appeal followed.

In its brief before this court the board, as the appellant, presents three assignments of error:

First Assignment of Error:

"The lower court erred in reversing the order of the Ohio State Pharmacy Board where said order is supported by reliable, probative and substantial evidence and is in accordance with law."

Second Assignment of Error:

"The lower court erred in holding that Rudy Smith was a registered wholesale distributor pursuant to R.C. 4729.51."

Third Assignment of Error:

"The lower court erred in holding that the drugs received by appellee in plastic bags and/or prescription vials with handwritten labels were not misbranded."

Before we begin our discussion of these assignments of error, it is important to point out that this court has a limited function in proceedings such as this. *Byrd* v. *State Bd. of Pharmacy* (Sept. 8, 1987), Warren App. No. CA87-02-010, unreported. In appeals of administrative disciplinary proceedings, this court has stated that it will review the decision of the common pleas court to determine whether it is

---

[1] The board's decision with respect to Dave Poppe's Medicine Shop was appealed to the Court of Common Pleas of Hamilton County because the Medicine Shop is located in Hamilton County. However, since Poppe resides in Clermont County, his own case was appealed to the Court of Common Pleas of Clermont County.

supported by reliable, probative and substantial evidence and is in accordance with law. *Ohio State Medical Bd. v. Curtwright* (1986), 34 Ohio App. 3d 369, 518 N.E. 2d 970; *Byrd, supra.* With this standard of review in mind, we have examined the assignments of error before us. For our own convenience, we have decided to address the board's contentions out of order.

For its second assignment of error, the board claims that the common pleas court erred in overruling its third finding by holding Rudy Smith met the definition of a "wholesale distributor of dangerous drugs." In order to understand this assignment of error, it is necessary to explain the law and the facts in the record.

Count three of Poppe's charging letter alleged that Poppe, as the responsible pharmacist for a terminal distributor of dangerous drugs, *i.e.,* Dave Poppe's Medicine Shop, purchased dangerous drugs for the purpose of resale from a person other than a registered wholesale distributor of dangerous drugs. This charge was based upon R.C. 4729.51(D), which, in pertinent part, provides:

"No licensed terminal distributor of dangerous drugs shall purchase [dangerous drugs] for the purpose of resale * * * from any person other than a registered wholesale distributor of dangerous drugs * * *[.]"

Naturally, in order to determine whether a person qualifies as a "wholesale distributor of dangerous drugs," the definition of that term must be consulted. R.C. 4729.02(O) defines a "wholesale distributor of dangerous drugs" as:

"* * * a person engaged in the sale of dangerous drugs at wholesale *and includes any agent or employee of such person authorized by such person to engage in the sale of dangerous drugs at wholesale."* (Emphasis added.)

It is undisputed that Tri-State Pharmaceuticals was a wholesale distributor of dangerous drugs and that Smith was a salesman, stock boy, shipping clerk, and general laborer for Tri-State Pharmaceuticals. In his capacity as a salesman, Smith made sales calls upon and received orders from Poppe. However, in addition to his legitimate sales activity, Smith simultaneously operated an illegal venture in which he repackaged pharmaceutical products that had been returned in damaged containers and then resold them without an invoice for cash.

The board found Poppe violated R.C. 4729.51(D) because he purchased repackaged drugs from Smith at those times Smith was not acting as an authorized representative of Tri-State Pharmaceuticals. Apparently, the board agreed with Smith's testimony that, despite being a salesman for Tri-State Pharmaceuticals, Poppe should have recognized that Smith was acting outside the scope of his authority because of his attire. That is, when he wore a coat and tie he was working for Tri-State Pharmaceuticals and when he wore warehouse clothing he was not.

Unconvinced by such evidence, the common pleas court reversed finding three because it concluded that the definition of a "wholesale distributor of dangerous drugs" contained in R.C. 4729.51(D), irrespective of Smith's clothing, made him an authorized agent of Tri-State Pharmaceuticals even though he was acting outside the scope of his employment when the illicit transactions took place.

Stressing the statutes involved as well as the cash and invoiceless nature of Smith's sales to Poppe, the board argues the trial court took too narrow a view of the evidence. We disagree.

Throughout the period when he was involved in the illegal repackaging and reselling of dangerous drugs, Smith was also a sales representative

for a wholesale distributor of dangerous drugs — Tri-State Pharmaceuticals. Because the R.C. 4729.02(O) definition of a "wholesale distributor of dangerous drugs" includes any agents or employees of that distributor authorized to engage in dangerous drug sales but does not limit such agents' or employees' authority to sales occurring *within the scope of their employment,* when Poppe bought drugs from Smith he was buying them from a person meeting the R.C. 4729.02(O) definition of a "wholesale distributor of dangerous drugs." Therefore, we find the common pleas court did not err in holding that the statutes relied upon by the board are not adequate to proscribe the conduct charged in count three of the board's charging letter. Accordingly, the board's second assignment of error must be overruled.

For its third assignment of error, the board claims the common pleas court erred in concluding drugs Poppe bought from Tri-State Pharmaceuticals that were delivered in plastic bags and/or prescription vials that did not contain the name of the manufacturer or distributor were not "misbranded" as that term is defined in R.C. 3715.64 (A) and 3715.52.

The common pleas court overturned the board's fourth and seventh findings because it concluded that none of the allegedly misbranded drugs listed in either count six or nine of the charging letter had been produced at the hearing, and that it would be "speculative and conjectural" to assume from prescription bottles which were in evidence how prescription bottles which were not in evidence were labeled upon delivery. It therefore concluded the board's fourth and seventh findings were not supported by reliable, probative and substantial evidence.

The common pleas court's decision notwithstanding, the board argues there was reliable, probative and substantial evidence in the record to support its fourth and seventh findings. We disagree.[2]

In overturning the board's fourth and seventh findings, the common pleas court cited a lack of evidence to substantiate the board's allegation of misbranding. The record confirms the accuracy of the trial court's observation. The evidence before the board on inadequate labeling of drugs set forth in counts six and nine of the charging letter, where it existed at all, was based on speculation and conjecture founded upon double or triple hearsay.

Upon examining the record before us, we find the trial court's conclusion. — that there was no reliable, probative and substantial evidence of any receipt or sale of a misbranded drug as alleged in board findings four and seven — was correct. Accordingly, the board's third assignment of error is overruled.

For its first assignment of error, the board contends the common pleas court erred to the extent it reversed any pharmacy board order that was supported by reliable, probative and substantial evidence. In examining the argument made in support of this assignment of error, we are not directed to a specific board finding to

---

[2] We are not troubled by the board's argument that drug deliveries made in prescription vials or plastic bags are prohibited by R.C. 3715.64(A). An examination of R.C. 3715.64(A), which is titled "misbranded drugs," discloses no proscription against pharmaceutical deliveries in plastic prescription vials or plastic bags. Consequently, we find no violation of R.C. 3715.64 occurs when drugs which otherwise comply with R.C. 3715.64 are delivered in plastic prescription vials or plastic bags.

which an improper standard of review was applied but instead are given a shopping list of citations defining the standard of review the common pleas court was obliged to afford the board's decision.

Looking at the record before us, the common pleas court sustained the board's first and second findings and, therefore, we conclude the board does not intend to challenge its decision on them. In the second assignment of error, we examined the board's third finding and determined the common pleas court properly reversed it. In the third assignment of error, we examined the board's fourth and seventh findings and concluded that neither was supported by reliable, probative and substantial evidence. Consequently, the only board findings we have not reviewed are its fifth and sixth, which pertain to Poppe's alleged receipt and sale of drugs marked "samples" and "clinic packs." However, in its statement of facts the board has abandoned any reliance on the fifth and sixth findings by stating:

"Appellee [Poppe] was also cited for the sale of misbranded birth control pills. However, subsequent case law has not upheld the Board's interpretation of R.C. 3715.64(A) as it relates to samples and clinic packs of birth control pills and therefore, the lower court's ruling as to this issue will not be an assignment of error."

In light of this statement, we conclude the board has abandoned any claim of error associated with its fifth and sixth findings.

Having addressed all seven of the board's findings in one way or another, we conclude that, while the first assignment of error states a correct proposition of law, nothing remains in the record for us to review in connection with it. Accordingly, the board's first assignment of error must be overruled.

Turning now to Poppe's cross-appeal, we find he, as the cross-appellant, lists two assignments of error. They are:

First Cross-Assignment of Error:

"The court erred in failing to reverse the adjudication order because it is contrary to law."

Second Cross-Assignment of Error:

"The court erred in failing to reverse the adjudication order for the reason that the conduct of the adjudication hearing did not afford due process of law to Mr. Poppe."

As a preface to our discussion of these two cross-assignments of error, we note that our examination of them is limited to findings of fact one and two of the board because these are the only findings we have found to be sustained by reliable, probative and substantial evidence in the record before us.

For his first cross-assignment of error, Poppe alleges the court should have reversed the board's adjudication order for two reasons. First, the board's second conclusion of law, on which it based its $28,000 fine, was entered without a finding of any willful violation by Poppe. Second, the board improperly applied R.C. 4729.16(A)(2) retroactively.

Poppe's second argument can be disposed of immediately. R.C. 4729.16 (A)(2) provides, *inter alia,* that a pharmacist's identification card may be revoked, suspended, denied renewal or placed on probation, or a monetary fine may be imposed if the board finds the pharmacist is guilty of dishonesty in the practice of pharmacy. Poppe points out this statute became effective on September 20, 1984 (see 140 Ohio Laws, Part I, 2285, 2297) and that many of the violations he was accused of committing date back to 1981.

While Poppe's observations are accurate, none of the misconduct charges against him that we have sustained took place before September 20, 1984. Findings one and two occurred between April and June 1985. Therefore, no real retroactivity issue exists and his retroactivity claim has no merit.

Poppe also alleges the board's second conclusion of law is unlawful because it fails to include a determination that he *willfully* violated R.C. Chapters 2925, 3715, 3719, and 4729, as required by R.C. 4729.16(A)(5). R.C. 4729.16(A)(5) provides that a pharmacist's identification card may be revoked, suspended, denied renewal or placed on probation, or a monetary fine may be imposed if the board finds a pharmacist:

"Guilty of willfully violating, conspiring to violate, attempting to violate, or aiding and abetting the violation of any of the provisions of sections 3715.52 to 3715.72 or Chapter 2925., 3719., or 4729. of the Revised Code[.]"

Board finding one, which we have found to be supported by reliable, probative and substantial evidence, constitutes a violation of R.C. 3715.52(A)[3] and 3715.64(A)(11)(d).[4] Board finding two, which we also have found to be supported by reliable, probative and substantial evidence, constitutes a violation of R.C. 3715.52(C).[5]

We believe it is significant that while none of the R.C. Chapter 3715 violations we have found to be supported by reliable, probative and substantial evidence requires an accompanying mental state, R.C. 4729.16 (A)(5) does. It requires a pharmacist to have "willfully" violated the provisions of R.C. 3715.52 to 3715.72 or R.C. Chapter 2925, 3719, or 4729.[6] *State Bd. of Pharmacy* v. *Lewandowski* (Aug. 17, 1984), Lucas App. No. L-84-072, unreported.

The Committee Comment to R.C. 2901.22, which defines culpable mental states for Ohio crimes, equates a willful act with one done purposely; that is, one done with a specific intention to cause a certain result. In *Payne* v. *Vance* (1921), 103 Ohio St. 59, 133 N.E. 85, the Ohio Supreme Court observed in paragraphs three and six of the syllabus:

"[A] [w]ilful tort involves the element of malice or ill-will, but it is not necessary to show actual malice or ill-will. It may be shown by indifference to the safety of others after knowledge of their danger, or failure after such

---

[3] R.C. 3715.52(A) provides:

"The following acts and causing them are prohibited:

"(A) The manufacture, sale, or delivery, holding or offering for sale of any food, drug, device, or cosmetic that is adulterated or misbranded[.]"

[4] R.C. 3715.64(A)(11)(d) provides:

"(A) A drug or device is misbranded within the meaning of sections 3715.01 and 3715.52 to 3715.72 of the Revised Code, if:
"* * *

"(d) The drug sold or dispensed is not the brand or drug specifically prescribed or ordered or, when dispensed by a pharmacist upon prescription, is neither the brand or

drug prescribed nor a generically equivalent drug."

[5] R.C. 3715.52(C) provides:

"The following acts and causing them are prohibited:
"* * *

"The receipt in commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise[.]"

[6] Since Poppe's alleged violations are based on R.C. 3715.52, we need not concern ourselves with any willful violation of R.C. Chapters 2925, 3719, or 4729.

knowledge to use ordinary care to avoid injury.

"* * *

"[A] [w]ilful tort is not shown by proving the simple violation of a statute or ordinance unaccompanied by the intent or purpose to do injury after knowledge of danger, or failure after such knowledge to use ordinary care to avoid injury."

*Payne, supra,* points out the distinction between negligent and willful conduct in cases involving a statutory violation. Based upon it, while we view Poppe's dispensing of an improper drug and his purchase of improperly or inadequately labeled drugs were both negligent and a violation of statute, we do not find the reliable, probative and substantial evidence in the record before us elevates his culpability to "willful" misconduct.

Because the board concluded Poppe violated R.C. 4729.16(A)(5) without being presented with any reliable, probative and substantial evidence indicating that the violation was committed willfully, the board's second conclusion of law, which determined Poppe violated R.C. 4729.16(A) (5), must be reversed. Moreover, because the board relied on this second conclusion of law to levy a $28,000 fine against Poppe, that fine must also be reversed and set aside.

Accordingly, we sustain Poppe's first cross-assignment of error insofar as it urges the board improperly relied upon R.C. 4729.16(A)(5) as a basis for fining Poppe $28,000, but overrule it insofar as it claims R.C. 4729.16(A)(2) was retroactively applied in this case.

Poppe's second cross-assignment of error alleges his right to due process of law was denied in three instances during the board hearing below. First, he claims the board refused to issue a subpoena for the notes of its investigator. Second, he claims the presiding hearing officer should have disqualified himself because he had a personal stake in the proceeding. Finally, he claims the board made frequent and obvious references to evidence not in the record.

Since only two of the board's seven findings of fact have survived to this point, we will limit consideration of Poppe's second cross-assignment of error to their impact upon these two findings.

In anticipation of the board's hearing, Poppe's attorney subpoenaed a number of items, including the board investigator's report. At the board hearing, Poppe's counsel was given access to all the materials his subpoena *duces tecum* sought except the board investigator's report. Access to the report was denied when the hearing's presiding officer granted a "motion to quash" Poppe's subpoena *duces tecum* as to that report.

R.C. 119.09 gives an administrative agency the authority to issue subpoenas either upon its own request or upon the request of a party receiving notice of the hearing. In this case, despite its authority and, indeed, its duty to issue a subpoena upon Poppe's request, the board did not do so. Because it was the board's duty to issue a subpoena upon Poppe's request for one, we conclude the board failed to comply with its R.C. 119.09 obligation to Poppe. However, because no subpoena *duces tecum* was ever issued, no motion to quash was properly before the board and granting such a motion was a nullity.

Having found error occurred in the board's failure to issue a subpoena *duces tecum* as Poppe requested, our next task is to examine the prejudice to his case which resulted therefrom. In doing so we are mindful that not all errors in an administrative proceeding, or a judicial proceeding for that matter, require reversal. Prejudice to the rights of the complaining party arising

from the error complained of is essential to a reversal. *Lies* v. *Veterinary Medical Bd.* (1981), 2 Ohio App. 3d 204, 2 OBR 223, 441 N.E. 2d 584.

In this case we find no prejudice to Poppe resulted from the board's failure to issue his subpoena *duces tecum.* We have sustained two of the board's seven findings against Poppe. Findings one and two, which relate to Poppe's receipt and later sale of an improperly identified prescription drug, were readily admitted and, in fact, prompted him to call the board to initiate the investigation which culminated in the proceedings *sub judice.* In light of Poppe's ready admission of the events leading to findings one and two, we are persuaded he was not prejudiced by the board's refusal to issue a subpoena *duces tecum* for the board investigator's notes or report. Surely, Poppe knew more about these events than the board's investigator ever could have since he was so personally involved in them.

Poppe next complains that he was denied due process because the board's presiding officer, Thomas Woebkenberg, had an ownership interest in a wholesale drug distributorship that competed with Tri-State Pharmaceuticals, Poppe's supplier, and therefore Woebkenberg should have recused himself due to a conflict of interest. We disagree.

We note initially that the Revised Code contains no provision for the disqualification of administrative board members such as Woebkenberg. The lack of statutory authority for administrative recusals prompted the Ohio Supreme Court in *Ohio Transport, Inc.* v. *Pub. Util. Comm.* (1955), 164 Ohio St. 98, 57 O.O. 108, 128 N.E. 2d 22, paragraph seven of the syllabus, to state:

"In the absence of legislative direction as to the circumstances under which a member of the Public Utilities Commission should disqualify himself and in the absence of statutory provisions for the determination of the fact of disqualification and the substitution of another to replace a member disqualified, the members of the Public Utilities Commission have no jurisdiction to determine the disqualification of each other by reason of alleged bias or prejudice."

In light of the lack of any statutory authority for a pre-hearing motion to disqualify an administrative board member, we believe Poppe's contention is reduced to one of a denial of due process based on the manner in which Woebkenberg conducted or participated in the board's decision-making process.

In *Hiett* v. *Goshen Twp. Bd. of Trustees* (July 30, 1984), Clermont App. No. CA83-04-033, unreported, this court held that there is a presumption of honesty and integrity on the part of an administrative body unless there is a showing to the contrary. In *Frost* v. *Wilmington* (Jan. 31, 1986), Clinton App. No. CA85-08-014, unreported, we built upon *Hiett, supra,* by holding that the party alleging a disqualifying interest bears the burden of demonstrating that interest to a reviewing court. In *Gibraltar Mausoleum Corp.* v. *Cincinnati* (1981), 1 Ohio App. 3d 107, 1 OBR 410, 439 N.E. 2d 922, the Court of Appeals for Hamilton County found a violation of due process occurred when an administrative board member stated his position and left a hearing without even listening to a party's evidence.

The record in the case *sub judice* demonstrates no indications of Woebkenberg's bias or prejudice. It contains no misconduct on his part but instead reveals his sole participation was limited to presiding over Poppe's hearing. He performed that responsibility in an acceptable fashion. Because we find no evidence of bias or prejudice in

Woebkenberg's conducting of the instant hearing, we overrule Poppe's second cross-assignment of error insofar as it alleges Woebkenberg should have disqualified himself from presiding over Poppe's disciplinary hearing.[7]

For his final argument in support of his denial of due process claim, Poppe asserts that evidence which was never admitted at the hearing was considered by the board in reaching its decision in this case. Specifically, Poppe points out that a pharmacy wholesale price list for 1984 and 1985 was mentioned during the hearing to suggest the suspicious extent to which normal wholesale prices were being undercut by Tri-State Pharmaceuticals.

Assuming *arguendo* Poppe's point is well-taken, we are nevertheless persuaded that it should be overruled because the evidence he brings to our attention does not form a predicate for any of the findings this court or the common pleas court has sustained as being supported by reliable, probative and substantial evidence. Accordingly, we overrule Poppe's second cross-assignment of error in its entirety.

In summary on Poppe's cross-appeal, we sustain his first cross-assignment of error insofar as it urges the board improperly relied on R.C. 4729.16(A)(5) as a basis for fining Poppe $28,000, but overrule it insofar as it claims R.C. 4729.16(A)(2) was retroactively applied in this case. We overrule his second cross-assignment of error in its entirety.

In light of our resolution of the assignments of error on the board's appeal and our resolution of Poppe's cross-appeal, we affirm the common pleas court's judgment in part and reverse it in part. However, in reviewing the record before us, we have become convinced that while the common pleas court properly reviewed the board's seven findings of fact against Poppe, when it applied its findings to the conclusions of law and disciplinary action taken in the case *sub judice* it inadvertently used the pharmacy board's conclusions of law and disciplinary action taken against the medicine shop as the basis for modification of the disciplinary action taken against Poppe personally. As noted in the board's brief, the court's reliance on the board's order against Dave Poppe's Medicine Shop in reaching a final determination of this cause was an oversight. However, this oversight can be corrected upon remand.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed in part and reversed in part and this cause is remanded for further proceedings not inconsistent with this decision.

*Judgment affirmed in part, reversed in part and cause remanded.*

JONES, P.J., and KOEHLER, J., concur.

HENDRICKSON, J., concurs in part and dissents in part.

---

[7] Poppe's claim that Woebkenberg had personal knowledge of others involved in similar circumstances is unconvincing. Certainly as a member of the pharmacy board he was presented with a number of similar cases and would have acquired some familiarity with what had transpired. The same could be said for this court. However, we do not feel obliged, nor have we been asked, to recuse ourselves because we have knowledge of similar cases. See *Byrd* v. *State Bd. of Pharmacy, supra.*

HENDRICKSON, J., concurring in part and dissenting in part. Appellant's second assignment of error should be sustained as Smith, when engaged in his illegal venture outside the scope of his employment, was not a "wholesale distributor of dangerous drugs" as defined in R.C. 4729.02(O). Furthermore, Poppe, who acknowledged that Smith offered substantial discounts and demanded payment in cash when dressed in warehouse clothing, was, or should have been on notice, that Smith was not working for Tri-State Pharmaceuticals at that time. After all, Smith was not a stranger to Poppe and the difference in appearance together with the difference in terms when on an unauthorized venture should have been obvious. Thus, when Poppe took advantage of these good deals, he was in violation of R.C. 4729.51(D). A reading of the record indicates that Poppe had reason to be suspicious of Smith, but that he did nothing until a customer received the wrong drug.[8] Consequently, I would reverse that portion of the decision of the court of common pleas which is the subject of the second assignment of error as there is reliable, probative and substantial evidence to support the decision of the appellant-board.

---

[8] This statement was made at p. 89 of the transcript in response to cross-examination. Later, on direct examination following a ten-minute recess, Poppe indicated that after purchasing items for cash he called the employer, asked for Smith and was informed that Smith was on the road selling. However, Poppe never expressed any concern to the wholesaler. He said instead that after learning that Smith was out selling, he "tried to find every reason not to believe my suspicions." Nevertheless, a reading of the record convinces me that Poppe's response on cross-examination is true, *i.e.,* that he did nothing until notified of an injury to a customer.

Furthermore, appellant's first assignment of error should be sustained in part since appellant's third finding is supported by reliable, probative and substantial evidence. However, I agree with the majority that appellant's third assignment must be overruled and that there is no merit to the remainder of the first assignment of error. Also, I agree with the majority as to the disposition of the cross-appeal.