**STECKLER, Appellant,**

v.

**OHIO STATE BOARD OF PSYCHOLOGY, Appellee.**

[Cite as *Steckler v. Ohio State Bd. of Psychology* (1992), 83 Ohio App.3d 33.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61094.

Decided Oct. 5, 1992.

34

*Walter, Haverfield, Buescher & Chockley, John H. Gibbon* and *Amy Berman Hogan*, for appellant.

*Lee Fisher*, Attorney General, and *Gregg B. Thornton*, Assistant Attorney General, for appellee.

NAHRA, Presiding Judge.

George Steckler, Ph.D., appellant, appeals a decision of the Cuyahoga County Court of Common Pleas affirming the State Board of Psychology's order suspending his license to practice psychology for sixty days.

Dr. Steckler is a licensed psychologist in Ohio. In January 1989, Steckler entered into a verbal agreement with Edward Perkinson to serve as a consultant in Perkinson's counselling practice. Perkinson had applied for his counsellor's license in October 1985. On January 19, 1986, Perkinson received a letter from the Counsellor and Social Worker Board which acknowledged receipt of his application and that he was under consideration. However, Perkinson was not a licensed counsellor at the time that he entered into the agreement with Steckler.

Steckler's role would be to supervise Perkinson's cases and to sign insurance forms so that Perkinson's clients could be reimbursed. Steckler also agreed to serve as a consultant to Perkinson's wife, Sue Perkinson, who is a licensed

independent social worker. However, the only relationship at issue here is that between Steckler and Edward Perkinson.

Upon entering such relationship with the Perkinsons, Steckler submitted a registration form to the State Board of Psychology in which he indicated that the Perkinsons were exempt from the Rules of Supervision and that their relationship was also not governed by the rules of supervision, Ohio Adm.Code 4732–13–01 *et seq.* Steckler apparently believed that Mr. Perkinson was licensed as a counsellor with the Counsellor and Social Worker Board.

Perkinson saw clients at his home in Akron using the business title of "Counselling & Psychological Associates." Although Steckler was paid an hourly fee for case review and test interpretation, he never actually consulted with Perkinson on some cases and had never visited Perkinson's office. Evidence in the record indicates that Perkinson collected fees from the clients who paid him directly.

Brenda Muraco sought counselling and met with Perkinson for the first time on January 5, 1989. Perkinson told Muraco that he had a consulting relationship with a man in Cleveland, but did not reveal Steckler's name to her. Muraco met with Perkinson one more time. A third appointment was scheduled, but Muraco did not attend. She demanded to know the name of the person with whom Perkinson was associated, but Perkinson refused to disclose Steckler's name. Documents in the record indicate that Steckler's signature appeared twice on an insurance form for "individual psychotherapy" rendered to Brenda Muraco. Instructions on the insurance form explained that billed services were personally rendered by the signatory or under his "immediate personal supervision." However, evidence in the record indicates that Steckler had no contact with Muraco, that he did not provide a diagnosis of her condition, and that he had no data with which to evaluate the diagnosis provided by Perkinson.

On August 7, 1989, Steckler received a notice of opportunity for a hearing from the State Board of Psychology ("board") informing him that he had been charged with violating R.C. 4732.17(G) and Ohio Adm.Code 4732–13–01 *et seq.*

On December 9, 1989, a hearing was held before the board. On March 5, 1990, the board entered its adjudication order suspending Steckler's license for sixty days after finding that Steckler had violated eleven of the rules of supervision.

On March 19, 1990, Steckler filed a notice of appeal from such order with the Cuyahoga County Court of Common Pleas. On November 29, 1990, the court of common pleas affirmed the board's decision.

The court found that Perkinson was not a licensed mental health professional at the time in question, and, as a result, the rules of supervision were applicable. This appeal follows.

I

Appellant's first assignment of error states:

"The court of common pleas erred in affirming the State Board of Psychology's application of Ohio Administrative Code Chapter 4732–13 to the relationship between Dr. Steckler and Mr. Perkinson."

In reviewing a decision of a court of common pleas on an appeal from an administrative disciplinary proceeding, the limited function of the court of appeals is to determine whether the decision of the court of common pleas is supported by reliable, probative and substantial evidence and is in accordance with law. R.C. 119.12; *Arlen v. State* (1980), 61 Ohio St.2d 168, 15 O.O.3d 190, 399 N.E.2d 1251; *Ohio State Bd. of Pharmacy v. Poppe* (1988), 48 Ohio App.3d 222, 549 N.E.2d 541; see *In re Owner–Trainer Topper* (1959), 109 Ohio App. 289, 11 O.O.2d 49, 165 N.E.2d 19. This court is limited to a determination of whether the court of common pleas abused its discretion. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280; see *In re Barnes* (1986), 31 Ohio App.3d 201, 208, 31 OBR 470, 477, 510 N.E.2d 392, 399.

Application of this standard to the record herein leads us to the conclusion that the suspension of Steckler's license was supported by reliable, probative and substantial evidence and that the court of common pleas did not abuse its discretion when it affirmed the board's order. R.C. 119.12; see *Pioneer Chevrolet–Cadillac, Inc. v. Motor Vehicle Dealers Bd.* (1985), 17 Ohio St.3d 50, 17 OBR 42, 476 N.E.2d 1057.

The board suspended Steckler's license after it determined that he had violated R.C. 4732.17. Such statute provides:

"*The state board of psychology may* refuse to issue a license to any applicant, may issue a reprimand, or *suspend* or revoke *the license of any licensed psychologist* or licensed school psychologist, on any of the following grounds:

" * * *

"(G) *Violating any rule of professional conduct promulgated by the board* [.]" (Emphasis added.)

The board also found that Steckler had violated Ohio Adm.Code 4732–13–01 *et seq.* when he entered into the agreement with Perkinson as his supervisor. Ohio Adm.Code 4732–13–01 through 4732–13–03 are considered part of the rules of professional conduct and pertain to the supervision of persons performing psychological work. See Ohio Adm.Code 4732–17–01(D). Ohio Adm.Code 4732–13–01 provided in pertinent part:

"(A) The scope of the supervision rules concerns:

" * * *

"(3) Licensed psychologists are licensed school psychologists who are functioning as supervisors or supervisees."

Steckler is a licensed psychologist and the supervision rules apply to him since he acted as a supervisor to Perkinson.

Steckler asserts that Perkinson did not need to be supervised because Perkinson was *de facto* licensed as a counsellor after having submitted an application to the Counsellor and Social Worker Board for such license. As a result, Steckler maintains that the supervisory rules do not apply to him.

However, Perkinson was not a licensed counsellor. Rather, he had merely applied for such a license. Steckler's assertion that Perkinson was *de facto* licensed lacks merit. The mere act of applying for a license does not translate into the receipt of such license. Instead, we agree with the board's determination that Perkinson was an "allied mental health professional" and that the Rules of Supervision applied to Steckler as Perkinson's supervisor. As such, one of Steckler's duties as a supervisor is found in Ohio Adm.Code 4732–13–03(J)(12), which provided:

"(J) Supervisor responsibilities pertaining to professional supervision.

" * * *

"(12) A licensed psychologist may supervise allied mental health professionals only in those psychological activities for which the licensed psychologist is fully trained and competent. Under such supervisory relationship the licensed psychologist shall have full direction, control, and responsibility for client welfare. All other requirements of supervision apply to this supervisory relationship."

Steckler violated this rule since he never met with any of Perkinson's clients and did not have full control over their welfare.

Steckler finally argues that Perkinson did not need to be supervised because Perkinson was practicing a type of psychology allowed in his profession.

R.C. 4732.23 provides:

"Nothing in this chapter shall:

" * * *

"(B) Restrict persons *licensed, certified,* or registered under any other provision of the Revised Code from practicing those acts and utilizing psychological procedures that are allowed and within the standards and ethics of their profession or within new areas of practice that represent appropriate extensions of their profession, provided they do not hold themselves out to the public by the title of psychologist." (Emphasis added.)

Perkinson held himself out as a psychologist and called his practice "Counselling and Psychological Associates." He admitted that he rendered individual

psychotherapy to Muraco. However, Perkinson was not licensed and no evidence exists that he was certified or registered to practice psychotherapy.

As a result of the foregoing, we find that there was substantial, reliable, and probative evidence that Steckler violated the rules of professional conduct as a supervisor in the field of psychology.

Appellant's assignment of error is overruled.

## II

Appellant's second assignment of error states:

"The court of common pleas erred in denying Dr. Steckler's motion to admit additional evidence."

Subsequent to his hearing before the board, Steckler filed a motion with the court of common pleas to admit additional evidence. Steckler sought to admit evidence that a public hearing had been held by the State Board of Psychology on June 1, 1990 to consider proposed revisions to the Administrative Rules. Steckler maintained that the board's consideration of such amendments indicated that the rules of which he was found violative were ambiguous. The court of common pleas denied Steckler's motion.

R.C. 119.12 provides in pertinent part:

"Unless otherwise provided by law, the court may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency."

Newly discovered evidence refers to evidence that was in existence at the time of the administrative hearing but. which was incapable of discovery by due diligence; however, newly discovered evidence does not refer to newly created evidence. *In re Lane Nursing Home* (C.P.1976), 5 O.O.3d 146, 148.

Here, the proposed revisions did not constitute "newly discovered" evidence inasmuch as they did not exist at the time of the administrative hearing on December 9, 1989. Moreover, Ohio Adm.Code 4732–13–04, the recently enacted rule concerning mental health work supervision, would not have condoned Steckler's conduct.[1] Perkinson admitted that he was practicing psychotherapy. Fur-

---

1. Ohio Adm.Code 4732–13–04 provided in pertinent part:
    *"Requirements Pertaining to Supervision*
    "(A) Requirements for mental health worker supervision.
    "(1) Mental health worker supervision shall not be represented to any party as psychological work.

thermore, evidence indicated that Dr. Steckler violated supervision rules because he signed insurance forms as the supervisor of an allied mental health professional without ever seeing some of Perkinson's clients.

The trial court's denial of the motion to admit evidence was proper.

Appellant's assignment of error is overruled.

### III

■ Appellant's third assignment of error states:

"The court of common pleas erred in affirming the State Board of Psychology's decision to suspend Dr. Steckler's license to practice psychology for 60 days."

Steckler asserts that the suspension of his license to practice psychology for sixty days is unduly harsh and that the trial court erred by affirming the board's order.

As mentioned above, the board's order that Steckler had violated supervision rules was supported by reliable, probative and substantial evidence and is in accordance with law. R.C. 119.12. The sanction imposed by the board was clearly within its discretion. *In re Barnes* (1986), 31 Ohio App.3d 201, 31 OBR 470, 510 N.E.2d 392. A common pleas court may not substitute its judgment for that of the agency which issued the order. *Hocking Valley Ry. Co. v. Pub. Util. Comm.* (1915), 92 Ohio St. 362, 110 N.E. 952; *Farrao v. Bur. of Motor Vehicles* (1975), 46 Ohio App.2d 120, 75 O.O.2d 106, 346 N.E.2d 337; see *Pioneer Chevrolet–Cadillac, Inc. v. Ohio Motor Vehicle Dealers Bd.* (1985), 17 Ohio St.3d 50, 17 OBR 42, 476 N.E.2d 1057. As a result, the trial court's decision to affirm the sanction was proper.

Appellant's assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SPELLACY and PATTON, JJ., concur.

---

"(2) A treatment plan shall be prepared for each recipient of services as part of the initial evaluation but no later than the second contact session, and shall be signed by the mental health worker delivering the services and the recipient or his/her legal guardian.

"(3) Without fourteen days thereafter, the supervising licensed psychologist shall review the plan and shall either:

"(a) sign it as submitted;

"(b) require modifications prior to signing it; or

"(c) refuse to sign it if in his/her professional judgment in conformance with the standards of the profession of psychology it is unsatisfactory or unnecessary.

"(4) The licensed psychologist shall exercise reasonable professional judgment, consistent with the standards of the profession of psychology, when providing mental health worker supervision."