OPINION.
{¶ 1} The defendant-appellant, Trent Hill, appeals from his conviction in a bench trial for a violation of R.C. 2921.331(B), which provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Hill claimed at trial that he had not heard or seen the lights and siren of a Blue Ash police cruiser that had pursed his motorcycle for over three minutes at speeds in excess of one hundred miles per hour. The trial court found that because Hill's operation of his motorcycle had caused a substantial risk of serious physical harm to persons or property, his offense was punishable as a third-degree felony as provided in R.C. 2921.331(B)(5)(a)(ii). The trial court sentenced him to three years' community control and imposed a three-year driver's-license suspension with work privileges. In four assignments of error, Hill now contends that (1) the evidence was insufficient to support his conviction; (2) the judgment was against the manifest weight of the evidence; (3) the trial court erred by overruling his motion for a judgment of acquittal pursuant to Crim.R. 29; and (4) the trial court wrongly allowed speculative opinion testimony concerning Hill's knowledge of the police officer's signal. The assignments of error are not well taken.
 Facts {¶ 2} On June 9, 2003, at 9:27 p.m., Blue Ash police officer Steve Keller clocked Hill's motorcycle on radar at a speed of seventy-four miles per hour as it proceeded westbound on Interstate 275 through a construction area lined with orange barrels, in a posted fifty-mile-per-hour zone. Keller testified that he pulled his cruiser onto the highway in pursuit of Hill and activated the overhead lights and siren. The overhead lights also activated the cruiser's video camera, which recorded Officer Keller's pursuit of Hill on videotape. Officer Keller testified that, as it was dusk at the time of his pursuit of Hill, the lights from the cruiser's light bar reflected off signs, orange barrels, and cars traveling ahead of him.
 {¶ 3} The videotape, received in evidence by the trial court, showed Officer Keller's cruiser passing a group of motorcycle riders and other automobiles. Hill was visible at a distance estimated by Officer Keller at one hundred fifty yards ahead of the cruiser. Two minutes after he had activated his lights and siren, Officer Keller closed to within what appeared on the videotape to be approximately six car lengths. In his testimony, Officer Keller estimated the distance to be fifty feet.
 {¶ 4} With Officer Keller at his closest point during the pursuit, Hill then accelerated and pulled away from the cruiser. According to Officer Keller, Hill accelerated to a speed of one hundred twenty miles per hour while weaving in and out of traffic, as the videotape showed, first onto the left "high-speed emergency lane," then across three lanes onto the right "slow-speed emergency lane," and then back onto the highway. At the junction of I-75 and I-275, Hill pulled onto the exit ramp and stopped his motorcycle. There Officer Keller arrested and handcuffed him. The videotape also showed that, during the final thirty seconds of the three-minute pursuit, Hill passed thirty-one vehicles on the highway, as well as one vehicle on the exit ramp, before stopping.
 {¶ 5} Hill, a Cincinnati firefighter who was off duty at the time, said that he thought he was going eighty-five to ninety miles per hour. He claimed that he was not aware of the siren or the cruiser's lights until he slowed the motorcycle at the exit ramp and looked back. He testified that because of the high rate of speed at which he was operating his motorcycle, the noise of the wind made it impossible to hear the siren. Furthermore, he testified that because his rearview mirrors were vibrating and his attention was focused on the highway in front of him, he did not see the cruiser's flashing lights behind him.
 {¶ 6} In finding Hill guilty, the trial court said, "I find after reviewing the videotape again, that the tape establishes that when the police car came within view of the defendant's motorcycle, the defendant did weave across various lanes from left to right and then back again in a way that is not consistent simply with trying to see how fast the motorcycle can go." The trial court noted that Hill increased his speed from seventy-four to one hundred twenty miles per hour after the officer began to follow and concluded, "[W]ith that weaving there that was a willful design to flee a police officer, and I don't find that based on just recklessness of the conduct, and it was certainly reckless, but on the basis of all that swerving at such unusually high rates of speed when there is a police car in sight with its lights on and with its siren on."
 {¶ 7} Hill's first three assignments of error challenge the weight and sufficiency of the evidence, contending that the state failed to meet its burden of proving beyond a reasonable doubt that he had willfully failed to comply with the signal of a police officer in violation of R.C. 2921.331(B).
 Stacking Inference on Inference {¶ 8} Hill first argues that the trial court erred in finding him guilty and in denying his Crim.R. 29 motion for a judgment of acquittal, because the state failed to prove by direct evidence or by permissible inferences that Hill was aware of Officer Keller's lights and siren. If he was unaware of the lights and siren, Hill argues, he could not have acted "willfully to elude or flee a police officer," an element of the failure-to-comply offense. See R.C. 2921.331(B). Although "willfully" is not a mental state identified in R.C 2901.22, the 1974 Legislative Service Commission Comment equates "willfully" with "purposely." See State v. Warner (1990), 55 Ohio St.3d 31, 63,564 N.E.2d 18; see, also, State v. Beck (Oct. 27, 2000), 6th Dist. Nos. L-00-1061 and L-00-1062; Ohio State Bd. of Pharmacy v. Poppe
(1988), 48 Ohio App.3d 222, 227, 549 N.E.2d 541. In its findings the trial court correctly equated "willfully" with "purposely," defined in R.C. 2901.22(A) as "act[ing] when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 9} It is well established in Ohio that "[a]n inference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts, is an inference on an inference and may not be indulged in [by the trier of fact]." Hurt v. Charles J. Rogers Transp. Co. (1955),164 Ohio St. 329, 130 N.E.2d 820, paragraph one of the syllabus. But an inference based in part on another inference and in part on facts is a parallel inference and, if reasonable, may be relied on by the trier of fact in determining guilt beyond a reasonable doubt. See id. at paragraph two of the syllabus. It is, likewise, permissible for the trier of fact to draw two or more inferences from the same facts as a basis for its ultimate findings unless reasonable minds can reach but one conclusion to the contrary. See id. at paragraphs three and four of the syllabus.
 {¶ 10} Hill argues that the only direct evidence that he was aware of Officer Keller's signal was when the videotape showed Hill looking back at the cruiser as it closed to within ten feet of him near the I-75 exit ramp. He maintains that what the trial court referred to as "swerving and weaving" were "mere changes of lanes usually to pass slower moving vehicles." He claims that the videotape rebutted any inference of his intention to elude or flee Officer Keller, as it showed that he used his turn signals whenever he changed lanes — conduct inconsistent with one attempting to elude or flee from an officer.
 {¶ 11} It is undisputed that Officer Keller activated the siren and lights on the cruiser. Based upon its review of the videotape, the trial court stated in its findings that when the cruiser came within sight, Hill "did weave across various lanes from left to right and then back again." Hill's explanation that his swerving and weaving was simply an attempt "to pass slower moving vehicles" is questionable, as even at the speed Hill admits he was traveling, all traffic would have been slower moving.
 {¶ 12} In his defense, Hill relies on State v. Uckotter
(May 11, 1983), 1st Dist. No. C-820484, holding that a police officer's signal made by waving a hand-held light was so vague in its meaning that the defendant's failure to comply with it was insufficient to establish willful disobedience. State v.Uckotter is clearly inapplicable, as the issue here was not whether the meaning of the signal was vague. The issue the trial court decided was whether, despite Hill's denial, a reasonable trier of fact could have inferred from the direct evidence of his speed and manner of operation that Hill was aware of Officer Keller's signal.
 {¶ 13} We hold that the trial court's inference that Hill was aware of the siren and lights was reasonable based upon the direct evidence of his extreme speed during a three-minute pursuit, of the flashing lights reflected from traffic and objects ahead of the cruiser, and of his evasive movements in traffic, weaving at high speed and crossing both lanes to the opposite shoulder after Officer Keller's cruiser closed to within fifty feet of his motorcycle.
 The Felony Conviction {¶ 14} Hill also challenges the trial court's finding that the offense was punishable as a third-degree felony rather than as a misdemeanor. R.C. 2921.331(B)(5)(a)(ii) provides that a violation of R.C. 2921.331(B) is a third-degree felony if the "operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." Because the subsection elevates the degree of the crime rather than simply increasing the penalty, it defines an additional element of the offense. See State v. Allen (1987),29 Ohio St.3d 53, 54, 506 N.E.2d 199.
 {¶ 15} "Substantial risk" is defined in the criminal code as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). "Serious physical harm to persons" means "any physical harm that carries a substantial risk of death; * * * some permanent incapacity, whether partial or total, or some temporary, substantial incapacity; * * * some permanent disfigurement or * * * temporary serious disfigurement; * * * acute pain of such duration as to result in substantial suffering that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(b) through (e).
 {¶ 16} Hill argues that the trial court "simply assumed that the high speed and lane changing constituted reckless operation" and did not require the state to make its case. This is a misstatement of the trial court's findings as well as of the evidence. The pursuit on videotape was vivid evidence that was sufficient alone to persuade the trial court, sitting as the trier of fact, that the manner in which Hill operated his motorcycle had caused a substantial risk of serious physical harm to persons, let alone property. Hill drove his motorcycle at more than twice the posted speed limit in a crowded construction zone, passing dozens of other vehicles on the right and the left. The testimony of Hill's own expert witness was self-defeating when he stated that the result of the slightest mistake when operating a motorcycle at these speeds posed a high likelihood of a fatal accident, or in his words "bury me today." Accordingly, the state met its burden of proof on this element beyond a reasonable doubt.
 {¶ 17} The record reflects substantial, credible evidence from which the trial court could have reasonably concluded that the state had proved all elements of the charged crime beyond a reasonable doubt, including that Hill had operated his motorcycle so as to willfully elude or flee a police officer after receiving a visible and audible signal to stop, in violation of R.C.2921.331(B), and that the offense was punishable under R.C.2921.331(B)(5)(a)(ii). See State v. Waddy (1991),63 Ohio St.3d 424, 430, 588 N.E.2d 819, certiorari denied (1992), 506 U.S. 921,113 S.Ct. 338.
 {¶ 18} Moreover, the trial court properly denied Hill's motion for a judgment of acquittal, when reasonable minds could have reached different conclusions as to whether each element of the crime charged, including the mens rea of willfully fleeing, had been proved beyond a reasonable doubt. See Crim.R. 29; see, also, State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184.
 {¶ 19} Our review of the record fails to persuade us that the trial court, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Thompkins, 78 Ohio St.3d 380, 387 1997-Ohio-52,678 N.E.2d 541. The weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact to determine, and any inconsistencies in the evidence were also for the trial court to resolve as the trier of fact. See State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The trial court, in resolving conflicts in the testimony, could properly have found that Hill was aware of the officer's signals. We hold that Hill's conviction was not against the manifest weight of the evidence. The first, second, and third assignments of error are overruled.
 Lay Opinion under Evid.R. 701 {¶ 20} Hill's fourth assignment of error, in which he argues that the admission of Officer Keller's opinion that "I feel he knew I was behind him" was reversible error, is overruled. In response to questions on cross-examination, and without objection or a motion to strike by Hill's counsel, Officer Keller expressed this opinion twice. First, the trial court did not refer to this opinion in the reasons it gave for finding Hill guilty. In a bench trial, it is presumed that the trial court considered only relevant, material, and competent evidence in determining guilt. See State v. Kinley (1995), 72 Ohio St.3d 491, 651 N.E.2d 419, certiorari denied (1996), 517 U.S. 1106, 116 S.Ct. 1324; see, also, State v. Pinnock, (May 14, 1997), 1st Dist. No. C-950882.
 {¶ 21} Second, Hill did not object to this testimony, thereby waiving all but plain error under Crim.R. 52. See State v.White (1998), 82 Ohio St.3d 16, 22, 693 N.E.2d 772. For this court to reverse on plain error, (1) there must be an error, i.e., a deviation from a legal rule, (2) the error must be plain, which means that it must be an obvious defect in the trial proceedings, and (3) the error must have affected substantial rights, which means that the trial court's error must have affected the outcome of the trial. See State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.
 {¶ 22} Finally, the admission of Officer Keller's opinion was not error and thus could not have been plain error. Under Evid.R. 701, the testimony of a witness is admissible as to "opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Here Officer Keller's opinion was rationally based upon his perceptions during his three-minute pursuit of Hill and was helpful to a clear understanding of a fact in issue — Hill's awareness of Officer Keller's signals. See State v. Nicholas (July 30, 1986), 1st Dist. No. C-850713 (where the defense was not guilty by reason of insanity, lay opinion of a police officer concerning the defendant's mental state was appropriate on ability to perceive and respond to the display of authority of uniformed officers at the scene). The fourth assignment of error is overruled.
 {¶ 23} Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
Winkler, P.J., and Sundermann, J., concur.