CINCINNATI CITY SCHOOL DISTRICT, Appellant,

v.

STATE BOARD OF EDUCATION et al., Appellees.

[Cite as *Cincinnati City School Dist. v. State Bd. of Edn.* (1996), 113 Ohio App.3d 305.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE11–1457.

Decided Aug. 6, 1996.

306

*Wood & Lamping* and *David C. DiMuzio,* for appellant.

*Betty D. Montgomery,* Attorney General, and *John P. Ware,* Assistant Attorney General, for appellee State Board of Education.

*Manley, Burke & Lipton* and *Timothy M. Burke,* for appellee Residents of Ken Arbre.

*Ennis, Roberts & Fischer* and *George E. Roberts,* for appellee Madeira City School District.

---

LAZARUS, Judge.

The Cincinnati City School District, appellant, appeals from the judgment of the Franklin County Court of Common Pleas, which affirmed the State Board of

Education's order transferring territory from the Cincinnati City School District to the Madeira City School District. We affirm for the reasons that follow.

The Ken Arbre subdivision, consisting of forty-eight homes, is located entirely within the city of Madeira but is part of the Cincinnati City School District. On March 29, 1992, residents of the subdivision submitted a petition pursuant to R.C. 3311.24 requesting that the subdivision be transferred to the Madeira City School District. The residents presented evidence that they were being denied full participation in their community, that their children were being denied access to programs in the city of Madeira because they were not enrolled in Madeira schools, and that transit time to Madeira schools would be substantially less than transit time to the assigned Cincinnati schools. Appellant opposed the transfer, arguing, among other things, that the transfer of the mostly white subdivision would increase racial isolation in appellant's schools. After a hearing on October 7, 1993, a State Board of Education referee [1] recommended that the board deny the transfer.

In considering a transfer petition, the referee must consider the answers of the transferee and transferor school districts to the seventeen questions listed in Ohio Adm.Code 3301–89–02(B). Ohio Adm.Code 3301–89–03(A). The referee must also consider the ten factors listed in Ohio Adm.Code 3301–89–03(B). The referee in this case found that all but two of the questions and factors favored the transfer:

"[I]t appears that all factors with the exception [of] racial isolation implications and potential financial implications would point to approving the transfer. * * *

"[I]t is recommended that the financial consequences and racial impact of the proposed transfer necessitate that Petitioner's request be denied."

The referee found that the transfer would cost appellant $70,000 to $75,000, or about 0.026 percent of its $291 million budget. The referee also found that none of the subdivision's fourteen school-age children attended any of appellant's schools, except one child who attended an alternative Cincinnati school and was scheduled to graduate in 1994. Three school-age children from the subdivision were home-schooled. The referee found that minorities constituted 64.7942 percent of the students in the Cincinnati City School District and 3.6882 percent of the students in the Madeira City School District. The minority enrollment in the three Cincinnati schools assigned to the Ken Arbre subdivision was 84.1, 80.48, and 75.64 percent, respectively. Relying on Ohio Adm.Code 3301–89–

---

1. Although the parties and Ohio Adm.Code 3301–89–03(C) use the title "hearing officer," we use the title "referee," which is used in the State Board of Education's resolution and elsewhere in Ohio Adm.Code Chapter 3301–89, most notably Ohio Adm.Code 3301–89–02(F), which provides for the appointment of a "referee."

03(B)(5) ("The transfer shall not cause, preserve, or increase racial isolation"), the referee recommended that the board deny the transfer because the percentage of minorities in appellant's schools would rise or stay the same after the transfer.

The State Board of Education rejected the recommendation and approved the transfer on July 12, 1994, finding that the negative effect on the racial balance of appellant's schools would be de minimis and that the transfer was "in the best interests of the school-age pupils most directly affected by the transfer." Appellant appealed pursuant to R.C. 119.12 to the Franklin County Court of Common Pleas. On August 16, 1994, the parties filed a joint stipulation suspending the transfer pending determination of the appeal. The court of common pleas failed to rule on appellant's motion to admit evidence of two other mostly white territories seeking transfers out of the Cincinnati City School District. On August 24, 1995, the court issued its decision affirming the board's resolution, finding that the board's conclusion that the transfer was in the best interests of the pupils and would have a de minimis effect on racial isolation was in accordance with law and supported by reliable, probative, and substantial evidence. The court also held that appellant did not have standing to raise an equal protection argument and that even if it did, the transfer order did not violate the Equal Protection Clause.

Appellant now asserts one assignment of error: "The trial court erred to the prejudice of appellant-appellant by ruling that the transfer of territory is in accordance with law." Appellant alleges three errors of law: (1) because the transfer preserves or increases racial isolation, the transfer violates Ohio Adm. Code 3301–89–03(B)(5); (2) the transfer violates the Equal Protection Clause; and (3) the court of common pleas erred in failing to admit evidence of two other requests for transfer of territory.[2]

 A resolution of the State Board of Education pursuant to an R.C. 3311.24 transfer request is appealable under R.C. 119.12. *Rossford Exempted Village School Dist. v. State Bd. of Edn.* (1989), 45 Ohio St.3d 356, 544 N.E.2d 651, paragraph one of the syllabus; see, also, *Union Title Co. v. State Bd. of Edn.* (1990), 51 Ohio St.3d 189, 555 N.E.2d 931, paragraph one of the syllabus (same holding regarding R.C. 3311.06 transfer requests). The court of common pleas must affirm an administrative agency's order if it is supported by reliable,

---

**2.** In its notice of appeal to the court of common pleas from the board's resolution, appellant stated two other grounds for appeal: (1) "The order may place the Appellant in a position of violating a federal desegregation order entered into in *Bronson v. Cincinnati City School Dist. Bd. of Edn.*, S.D. Ohio No. C–1–74–205]"; and (2) "The order may result in resegregation of the Cincinnati schools, in violation of federal law. [*Columbus Bd. of Edn. v. Penick* (1979), 443 U.S. 449, 99 S.Ct. 2941, 61 L.Ed.2d 666]." Appellant has not pursued these arguments on appeal to this court.

probative, and substantial evidence and is in accordance with law. R.C. 119.12; *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750–751.

■ Appellant first argues that the transfer of the Ken Arbre subdivision would preserve or increase racial isolation and that the transfer is prohibited by Ohio Adm.Code 3301–89–03(B)(5).

■ Ohio Adm.Code Chapter 3301–89 applies to transfers requested pursuant to R.C. 3311.24. Ohio Adm.Code 3301–89–01(A). Ohio Adm.Code Chapter 3301–89 contains four sections setting forth rules to be followed by school districts, the State Board of Education, the Department of Education, and referees appointed by the Department of Education. Under Ohio Adm.Code 3301–89–01, which is addressed to the State Board of Education, the board must give primary consideration to the present and ultimate good of the pupils:

"General policies of the state board of education in a request for transfer of territory under section 3311.06 or 3311.24 of the Revised Code

" * * *

"(F) A request for transfer of territory will be considered upon its merit with primary consideration given to the present and ultimate good of the pupils concerned." Ohio Adm.Code 3301–89–01(F).

Because the good of the pupils must be the primary consideration of the board, by definition no other single factor may be determinative of the transfer request.

"[T]he several factors for consideration set forth in Ohio Adm.Code 3301–89–02(B) and 3301–89–03(B) are intended to be an integral part of the board's transfer decision with primary consideration given to the present and ultimate good of all the students who are affected by the proposed transfer.

" * * *

"[I]t is appropriate for the board to consider both the social and educational needs of all affected students, as well as the potential financial implications of a transfer. When a transfer of school districts is proposed, a balancing must take place between many competing factors in order to achieve the desired result of achieving what is in the best interests of the students concerned." *Garfield Hts. City School Dist. v. State Bd. of Edn.* (1990), 62 Ohio App.3d 308, 319, 323, 575 N.E.2d 503, 511, 513; see, also, *In re Transfer of Territory from Streetsboro City School Dist. to Kent City School Dist.* (June 11, 1992), Franklin App. No. 91AP-1405, unreported, 1992 WL 132457 ("Primary consideration is given to the present and ultimate good of the students involved and no one factor determines the propriety of the transfer").

Ohio Adm.Code 3301–89–03, upon which appellant relies, is addressed to referees appointed by the Department of Education and states:

"Factors to be considered by a referee appointed to hear a request for transfer of territory under section 3311.06 or 3311.24 of the Revised Code

"(A) A referee appointed to hear a transfer request under section 3311.06 or 3311.24 of the Revised Code shall consider the information provided by the school districts under paragraph (B) of rule 3301–89–02 of the Administrative Code and shall be governed by the provisions of Chapter 3301–89 of the Administrative Code.

"(B) Other factors that a referee shall consider in hearing any request for a transfer of territory for school purposes include, but are not necessarily limited to:

"(1) Documented agreements made by public agencies involved in municipal annexation proceedings should be honored;

"(2) A previous agreement entered into by the school districts concerned should be honored unless all concerned districts agree to amend it;

"(3) The statement signed by the school district boards of education after negotiations as required by paragraph (D)(4) of rule 3301–89–04 of the Administrative Code;

"(4) There should not be undue delay in requesting a transfer for school purposes after a territory has been annexed for municipal purposes;

"(5) The transfer shall not cause, preserve, or increase racial isolation;

"(6) All school district territories should be contiguous unless otherwise authorized by law;

"(7) School district boundary lines that have existed for a long period of time should not be changed if substantial upheaval results because of long-held loyalties by the parties involved;

"(8) The pupil loss of the relinquishing district should not be such that the educational program of that district is severely impaired;

"(9) The fiscal resources acquired should be commensurate with the educational responsibilities assumed; and

"(10) The educational facilities of districts should be effectively utilized.

"(C) When a hearing officer has received and considered the information provided by representatives of the school districts, petitioners for a transfer of territory, and any other party at the hearing, particularly information under paragraph (B) of this rule and paragraph (B) of rule 3301–89–02 of the Administrative Code, and the evidence is in balance, the hearing officer may consider the

preference of the residents with school-age children who live in the territory sought to be transferred to another school district. The school district preference of such residents with school-age children in the territory requested for transfer may only be considered and given weight when all other factors are equal."

■ If an administrative regulation is ambiguous, courts must give due deference to the authoring agency's interpretation. *State ex rel. Palmer v. State Teachers Retirement Bd.* (1993), 90 Ohio App.3d 497, 502, 629 N.E.2d 1377, 1380; *State v. Mulhern* (1991), 72 Ohio App.3d 250, 594 N.E.2d 630.[3] Because transfers pursuant to R.C. 3311.06 and 3311.24 are idiosyncratic actions, a reasonable inference is that the state board's intent in issuing Ohio Adm.Code 3301–89–03 was to give needed guidance to the referee appointed to assist the board in making its determination. Ohio Adm.Code 3301–89–03 need not be read as creating a "veto factor" abrogating the board's duty under Ohio Adm.Code 3301–89–01(F) to give primary consideration to the present and ultimate good of the pupils. The board was within its discretion to interpret Ohio Adm.Code 3301–89–03(B) as not binding the board's discretion based on a single factor. Therefore, the court of common pleas did not abuse its discretion by deferring to this reasonable interpretation of the authoring agency.

Appellant asserts that the transfer of the Ken Arbre subdivision violates the Equal Protection Clause. The court of common pleas held that because appellant

---

**3.** In the absence of any case authority and without the benefit of the issue having been addressed by the parties, we presume that the state board's interpretations of Ohio Adm.Code Chapter 3301–89 are entitled to the same deference as are regulations issued by administrative departments created by R.C. 121.02. R.C. 3301.13 provides the general rule that the Department of Education is to be treated in the same manner as other departments of the state:

"The department of education shall be subject to all provisions of law pertaining to departments, offices, or institutions established for the exercise of any function of the state government; excepting that it shall not be one of the departments provided for under division (A) of section 121.01 of the Revised Code. In the exercise of any of its functions or powers, including the power to make rules and regulations and to prescribe minimum standards the department of education, and any officer or agency therein, shall be subject to Chapter 119. of the Revised Code."

The Department of Education is the administrative unit through which powers of the state board and duties of the superintendent of public instruction are administered. R.C. 3301.13. The superintendent is appointed by the state board. Section 4, Article VI, Ohio Constitution. The state board is part of the Department of Education. R.C. 3301.13. We also presume that the State Board of Education, whether independently or as part of the Department of Education, is the relevant "administrative agency" for this purpose. See *Union Title Co. v. State Bd. of Edn.* (1990), 51 Ohio St.3d 189, 192, 555 N.E.2d 931, 933–934 ("[T]he *State Board* promulgated Ohio Adm.Code 3301–89–01 through 3301–89–03" [emphasis added]). Speakman, "State Board Rules and Standards," Baldwin's Ohio School Service (March/April 1989) 13 ("The rules adopted *by the state board of education* are set forth in OAC Title 3301" [emphasis added]).

is a political subdivision of the state of Ohio, it does not have standing to invoke the protection provided by the United States Constitution against its own state. The court stated that even assuming that appellant has standing to challenge the state board's order on equal protection grounds, the order does not violate the Equal Protection Clause.[4]

■ The doctrine of standing in federal court is based on both the limitation on federal court jurisdiction embodied in the case-or-controversy requirement of Clause 1, Section 2, Article III, United States Constitution and prudential limitations on the exercise of that jurisdiction. *Warth v. Seldin* (1975), 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354; *Assn. of Data Processing Serv. Organizations, Inc. v. Camp* (1970), 397 U.S. 150, 151–152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184, 187. State courts are therefore not bound by the federal doctrine of standing. See *ASARCO, Inc. v. Kadish* (1989), 490 U.S. 605, 617, 109 S.Ct. 2037, 2045, 104 L.Ed.2d 696, 715. Nevertheless, in deciding issues of standing in the courts of Ohio, the Ohio Supreme Court relies on federal court decisions.

"The essence of the doctrine of standing is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.' " *Racing Guild of Ohio, Local 304 v. State Racing Comm.* (1986), 28 Ohio St.3d 317, 321, 28 OBR 386, 389, 503 N.E.2d 1025, 1029 (quoting *Baker v. Carr* [1962], 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 679); see, also, *Ohio Contractors Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088, 1089–1090; *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 75–76, 25 OBR 125, 128–129, 495 N.E.2d 380, 384–385, certiorari denied *sub nom. Sticklen v. Middletown* (1987), 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 837; *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 178–179, 64 O.O.2d 103, 104–105, 298 N.E.2d 515, 516–517.

---

4. The court of common pleas also held that the settlement agreement terminating *Bronson v. Cincinnati City School Dist. Bd. of Edn.*, S.D.Ohio, No. C–1–74–205, is inapplicable and that even if it were not applicable, the board's order does not violate the agreement. Appellant has not pursued violation of the *Bronson* settlement agreement as grounds for reversal before this court. See *Bronson, supra,* fn. 2.

In *Bronson v. Cincinnati City School Dist. Bd. of Edn.* (S.D.Ohio 1984), 604 F.Supp. 68, the court entered a consent decree settling the ten-year-old action by Cincinnati students and their parents alleging racial segregation of the Cincinnati City Schools in violation of the Equal Protection Clause. The consent decree contained a provision "to the effect that during the term of the agreement, compliance with the agreement shall be deemed to be compliance with the Fourteenth Amendment." *Id.* at 82. The record in this case contains the text of a settlement agreement dated October 26, 1993, which purports to replace the 1984 consent decree.

■ School districts have standing both to assert the equal protection rights of their students directly on behalf of the students and to raise the Equal Protection Clause as a shield on its own behalf when a state-ordered transfer would cause the school district to violate the equal protection rights of others. See *Akron Bd. of Edn. v. State Bd. of Edn.* (C.A.6, 1974), 490 F.2d 1285, 1289–1292, certiorari denied (1974), 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236; *School Bd. of Richmond, Virginia v. Baliles* (C.A.4, 1987), 829 F.2d 1308, 1310–1311; *Stanley v. Darlington Cty. School Dist.* (D.S.C.1995), 879 F.Supp. 1341, 1356–1359 (citing *Baliles* ); *Bd. of School Directors of Milwaukee v. Wisconsin* (E.D.Wis.1985), 649 F.Supp. 82, 95–96; see, also, *Benjamin v. Malcolm* (C.A.2, 1986), 803 F.2d 46, 54 (holding that city had standing to raise constitutional arguments against state because city faced contempt sanctions for noncompliance with court order), certiorari denied *sub nom. Cuomo v. Koehler* (1987), 480 U.S. 910, 107 S.Ct. 1358, 94 L.Ed.2d 528.

■ In holding that appellant lacks standing to raise its equal protection argument, the court of common pleas relied on *Avon Lake City School Dist. v. Limbach* (1988), 35 Ohio St.3d 118, 121–122, 518 N.E.2d 1190, 1193–1194; *State ex rel. Harrell v. Streetsboro City School Dist. Bd. of Edn.* (1989), 46 Ohio St.3d 55, 62–63, 544 N.E.2d 924, 931–932; and *In re Transfer of Territory from Streetsboro City School Dist. to Kent City School Dist.* (June 11, 1992), Franklin App. No. 91AP–1405, unreported, at 9, 1992 WL 132457. All three cases are distinguishable and not determinative of the issue of standing in this' case.

In *Avon Lake,* two school districts challenged the public utility tax assessments made by the tax commissioner against two utility companies. The school districts argued that the statutory scheme for appealing final determinations of the tax commissioner violated the procedural due process protections of the Fourteenth Amendment. *Avon Lake,* 35 Ohio St.3d at 120, 518 N.E.2d at 1191–1192. The court held that political subdivisions may not rely upon the protections of the Fourteenth Amendment to challenge the constitutionality of state legislation. "A political subdivision, such as a school district, receives no protection from the Equal Protection or Due Process Clauses vis-a-vis its creating state." *Id.* at 122, 518 N.E.2d at 1193. This case is different because appellant is not arguing that it has Fourteenth Amendment rights that would be violated by the transfer of the Ken Arbre subdivision. Rather, appellant is arguing that the transfer would cause appellant to violate the Fourteenth Amendment rights of its students.

■ In *Harrell,* two citizens sought transfer pursuant to R.C. 3311.24 of two small parcels from the Streetsboro City School District to the Kent City School District. The court of appeals issued writs of mandamus commanding the Streetsboro City School District to deliver the citizens' petitions to the State Board of Education in conformity with R.C. 3311.24(A). The school district

appealed, arguing that R.C. 3311.24 violates the Equal Protection Clause because the rules for citizen-initiated transfers pursuant to R.C. 3311.24 are different from those for transfers pursuant to R.C. 3311.22 and 3311.231. *Harrell,* 46 Ohio St.3d at 62–63, 544 N.E.2d at 931–932. The court held that the Streetsboro school district lacked standing to raise the equal protection rights of the electors in its district:

"Streetsboro [City School District] is not one of the qualified electors that it claims are the victims of these purportedly irrational classifications. Since Streetsboro is not a member of the class it identifies, it lacks standing to attack the statute's constitutionality on the ground that it violates others' rights to equal protection." *Id.* at 63, 544 N.E.2d at 932.

*Harrell* is distinguishable from this case in that the Streetsboro school district was challenging the authority of the General Assembly to establish rules by which citizens can initiate a transfer. The Streetsboro school district was raising the rights of electors to initiate a transfer. Here, appellant is challenging a resolution of the state board that would allegedly force appellant to violate the equal protection rights of its students. Appellant is raising the rights of its students in an effort to block a transfer. Third-party standing is the exception rather than the rule, and the exception applies in this case because of the relationship between the school district and its students. That relationship was not implicated by the Streetsboro school district's allegation that there was no rational basis for the General Assembly establishing different rules for initiating different types of transfers.

*In re Transfer of Territory from Streetsboro City School Dist.* was a subsequent appeal in the *Harrell* action. After the Streetsboro City School District forwarded the petitions to the State Board of Education, the State Board of Education approved the transfer, and the court of common pleas affirmed. On appeal, the Streetsboro City School District argued that R.C. 3311.24 was unconstitutional because it denied equal protection to those residents of the district who opposed the transfer because the statute permits transfer without either a popular vote or notice to all voters. *In re Transfer of Territory from Streetsboro City School Dist.* (June 11, 1992), Franklin App. No. 91AP–1405, unreported, at 9, 1992 WL 132457. This court quoted *Avon Lake* for the general rule that a political subdivision may not invoke against its own state the protections of the United States Constitution and noted that the nature of the Streetsboro school district's equal protection argument was the same as that advanced in *Harrell.* We also acknowledged that third-party standing may be appropriate in some circumstances, such as *Akron Bd. of Edn., supra.* As illustrated by the federal cases cited above, a school district raising the equal protection rights of its students is one of those circumstances.

We conclude that appellant has standing to raise the argument that the state board's resolution approving the transfer of the Ken Arbre subdivision violates the equal protection rights of its students.

 Although appellant has standing to assert its equal protection argument, we agree with the court of common pleas that appellant did not prove that the transfer would violate the Equal Protection Clause. The only pertinent evidence in the record is the percentage racial composition of the two districts and the territory. The only other material available to the court of common pleas or to this court is the reported 1984 opinion of the federal district court announcing the consent decree and the text of an October 26, 1993 settlement agreement, which purports to replace the 1984 consent decree. The lack of evidence in the record is reflected in the brevity with which appellant discusses the issue in its brief. Appellant states in conclusory fashion that the transfer will violate the Equal Protection Clause. The only authority appellant cites is a two-page memorandum and one-page judgment entry from 1973 out of the United States District Court in Cincinnati, in which the court rendered its judgment that an order of the State Board of Education ordering a transfer of territory from the Cincinnati City School District violated the Equal Protection Clause. Based solely on this memorandum and judgment entry, appellant asserts that any transfer of a largely white neighborhood out of the largely minority Cincinnati City School District would violate the Equal Protection Clause. We disagree. The fact that such a transfer could violate the Equal Protection Clause does not mean that every such transfer violates the Equal Protection Clause. The finding of a federal court twenty-three years ago that a proposed transfer from the Cincinnati City School District would violate the Equal Protection Clause does not create a rule of law that such a transfer is prohibited in perpetuity.

In reviewing the proposed splitting of a school district that was sixty-six percent black into two districts, one fifty-two percent black, one seventy-two percent black, the United States Supreme Court said that mere disparity in numbers did not constitute an equal protection violation:

"We need not and do not hold that this disparity in the racial composition of the two systems would be a sufficient reason, standing alone, to enjoin the creation of the separate school district. The fact that a school board's desegregation plan leaves some disparity in racial balance among various schools in the system does not alone make that plan unacceptable." *Wright v. Council of Emporia* (1972), 407 U.S. 451, 464, 92 S.Ct. 2196, 2204, 33 L.Ed.2d 51, 62.

Similarly, the mere transfer of a few students from the Ken Arbre subdivision cannot constitute an equal protection violation.

■ Appellant argues that the court of common pleas erred in failing to admit evidence of two subsequent requests of residents for transfer of territory from the Cincinnati City School District. The additional evidence proffered by appellant included an R.C. 3311.24 transfer request dated March 31, 1994, and an April 4, 1994 letter from the assistant superintendent of public instruction for the State Department of Education to the superintendent of the Cincinnati City School District acknowledging an R.C. 3311.24 request for transfer of territory from the Cincinnati City School District to the Forest Hills Local School District. Appellant contends that this evidence is relevant to illustrate the potential domino effect of approval of this transfer. Appellant filed its motion for admission of additional evidence on September 2, 1994, and all parties submitted memoranda. The court of common pleas rendered its decision August 24, 1995 without ruling on the motion.

■ R.C. 119.12 provides that, unless otherwise provided by law, additional evidence—that is, evidence beyond that in the record certified by the agency—may be admitted by the court of common pleas only when it is newly discovered and could not with reasonable diligence have been ascertained prior to the administrative hearing:

"Unless otherwise provided by law, the court may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency." R.C. 119.12.

The decision to admit additional evidence lies within the discretion of the court of common pleas, but only after the court has determined that the evidence is newly discovered and that it could not with reasonable diligence have been ascertained prior to the agency hearing. *Ganley, Inc. v. Ohio Motor Vehicle Dealers Bd.* (Sept. 29, 1994), Franklin App. No. 93APE12–1646, unreported, 1994 WL 530307; see *Rollins v. Ohio Real Estate Comm.* (May 2, 1985), Cuyahoga App. No. 48546, unreported, 1985 WL 8968. Newly discovered evidence is evidence that was in existence at the time of the administrative hearing. *Swope v. Bd. of Bldg. Stds.* (Dec. 23, 1993), Franklin App. No. 93AP–595, unreported, 1993 WL 538310; *Steckler v. Ohio State Bd. of Psychology* (1992), 83 Ohio App.3d 33, 38, 613 N.E.2d 1070, 1073–1074. The parties have not disputed, and we do not render an opinion on, the question of whether the relevant administrative hearing is the October 7, 1993 referee's hearing or the July 12, 1994 State Board of Education meeting. The residents of the Ken Arbre subdivision assert in their appellate brief that appellant was aware of the proffered additional evidence prior to the July 12, 1994 board meeting. Appellant did not rebut this assertion. We therefore need not decide which date is the reference date for determining

whether the evidence is newly discovered.[5] If October 7, 1993, is the reference date, then the evidence is not newly discovered because it was not in existence at the time of the referee's hearing; if July 12, 1994 is the reference date, then the evidence, although newly discovered, is inadmissible in the court of common pleas because it could "with reasonable diligence have been ascertained prior to the hearing before the agency." The court of common pleas did not err in failing to admit the additional evidence.

For these reasons, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and DESHLER, JJ., concur.

---

5. We note, however, that Ohio Adm.Code 3301–89–03(F) and (I) imply that the hearing, if one is requested, shall be before a referee.