OPINION
Appellants, JoAnne M. Schreiner et al., appeal from the judgment of the Franklin County Court of Common Pleas affirming an order of appellee, State Board of Education ("the Board"), that denied the transfer of territory from appellee, Cincinnati City School District, to the Forest Hills Local School District. For the reasons that follow, we reverse.
The territory in question, known as the Four Mile Area, consists of approximately one hundred twenty-five homes located in the vicinity of Four Mile Road in Anderson Township, Hamilton County. Presently, the Four Mile Area is the most extreme southeast section of the Cincinnati City School District and the only residential area in Anderson Township not in the Forest Hills Local School District. Moreover, with the exception of the Four Mile Area, the territorial boundaries of the Forest Hills Local School District are coterminous with Anderson Township. In March 1994, appellants submitted a petition, pursuant to R.C. 3311.24, requesting that the Four Mile Area be transferred to the Forest Hills Local School District. On March 4, 1997, a referee appointed by the Board pursuant to Ohio Adm. Code 3301-89-03(F) held an evidentiary hearing.
On May 13, 1997, the referee issued a report recommending that the Board approve the petition. In so doing, the referee found that, if the transfer were approved, the children in the area would be allowed to attend the same schools as their Anderson Township neighbors, transportation problems for the students would be improved, safety concerns would be dramatically reduced, and that the students would no longer feel isolated and could participate more easily in extracurricular activities with their classmates. The referee also found that the loss of the twenty students who attended the Cincinnati public schools from the Four Mile Area would have only a de minimis
effect on the educational operation, minority student ratio, and fiscal resources of the Cincinnati City School District. The referee further found that gaining twenty students would have little-to-no effect on the Forrest Hills School District. Finally, the referee noted the unique nature of the Four Mile Area as a "small, isolated geographic pocket located entirely within a township served by a single separate school system." (Report at 35.) Other than the Four Mile Area, there are no other areas located outside the city of Cincinnati but within the Cincinnati City School District where a transfer would make the receiving adjacent school district coterminous with that community's political boundaries. Accordingly, the referee concluded that the benefits of approving the petition outweighed any perceived harm to the Cincinnati City School District and that "the present and ultimate good of the pupils and the families involved in this territory would be in approving [the] transfer request." (Report at 41.)
The Cincinnati City School District filed objections to the report and, on September 9, 1997, the Board, by a 9-to-7-to-1 vote, overruled the recommendation of the referee and denied the request for the transfer. In its resolution denying the proposed transfer, the Board made four separate findings in support of its decision:
 [1.] * * * [T]hat students in the Four Mile/Sutton Roads area of Anderson Township are presently being appropriately served by the Cincinnati City School District; and
 [2.] * * * [T]hat the loss of valuation in the requested transfer area would have a detrimental impact on the fiscal and educational operation of the Cincinnati City School District; and
 [3.] * * * [T]hat maintenance of city school district boundaries is critical to the stability of such school districts in order to assure successful long-range planning and to avoid substantive harm to the relinquishing city school district; and
 [4.] * * * [T]hat a transfer would result in an increase of racial isolation[.]
Pursuant to R.C. 119.12, appellants appealed to the Franklin County Court of Common Pleas.
On August 21, 1998, the trial court affirmed the order of the Board, holding that the decision of the Board to deny the transfer was supported by reliable, substantial, and probative evidence and was in accordance with law. In so doing, the court reviewed the seventeen questions listed in Ohio Adm. Code3301-89-02(B) and the ten additional factors listed in Ohio Adm. Code 3301-89-03 that the Board and referee respectively are to consider in determining a request for a transfer under R.C.3311.24. Based upon this review, the trial court stated that "[a]lthough there are factors justifying both the denial and the approval of the transfer, in general, the Court agrees with the Board that after weighing them, the transfer must be denied." (Emphasis added; Decision at 12.)
In affirming the Board's determination, the court relied upon the following findings: (1) that the racial implications, while minimal now, were potentially great because the Four Mile Area would continue to develop; (2) that the loss of twenty white students to the Cincinnati City School District would add to the trend away from diversity at both schools; (3) that the Forest Hills School District is at or near capacity without the inclusion of the Four Mile Area, which has the potential of having many more than the present twenty students; (4) that any amount of revenue loss to a district in "dire financial straits" would be detrimental both educationally and fiscally; (5) that the acquisition of $422,000 in tax revenue when compared with the cost to educate twenty students would amount to a windfall for Forest Hills; (6) that most of the parents who testified at the hearing did not send their children to the closest Cincinnati public school, and that this choice caused their inconvenience problems; (7) that even if the transfer were allowed, the children would be isolated by geography from the other children that attend the Forest Hills schools; and (8) that the parents chose to move into a geographically isolated community that they knew was within the Cincinnati City School District.
On September 9, 1998, the trial court filed its judgment entry reflecting its August 21, 1998 decision. It is from this entry that appellants appeal to this court, raising the following three assignments of error:
First Assignment of Error
 The Common Pleas Court Erred, As a Matter of Law and to the Prejudice of Appellants, by Failing to Give Primary Consideration to the Interests of the Students, in Direct Violation of OAC § 3301-89-01(F).
Second Assignment of Error
 The Lower Court Erred, as a Matter of Law and to the Prejudice of Appellants, by Failing to Analyze the Record to Determine Whether the Decision of the State Board was Supported by Reliable, Probative, and Substantial Evidence in the Record.
Third Assignment of Error
 The Lower Court Based Its Decision on Factors Other Than Those Established By Law and Abused Its Discretion.
Before we address appellants' assignments of error, we must decide whether the Board had jurisdiction to consider appellants' petition in the first place. The Cincinnati City School District argues that the Board had no such authority based upon the language of R.C. 3311.24(A) in effect when appellants' petition was submitted. According to appellees, the statute, in effect in 1994, did not allow for territorial transfers from a city school district to a local school district.[1] The relevant provisions of R.C. 3311.24(A), at that time, provided as follows:
 Except as provided in division (B) of this section, if the board of education of a city school district or of an exempted village school district deems it advisable to transfer territory from such district to an adjoining city or exempted village school district or to an educational service center, or if a petition, signed by seventy-five per cent of the qualified electors residing within that portion of a city or exempted village school district proposed to be transferred voting at the last general election, requests such a transfer, the board of education of the district in which such proposal originates shall file such proposal, together with a map showing the boundaries of the territory proposed to be transferred, with the state board of education prior to the first day of April in any even-numbered year. * * *
Appellees contend that because this language did not specifically include transfers from a city school district to alocal school district, the Board had no authority under the statute to consider petitions seeking such transfers. We disagree. The statutory language specifically allowed transfers of territory from a city school district to a county schooldistrict. At the time, a county school district (a supervisory body for local school districts) was defined to include the territory of the local school districts in a particular county or governing territory. See pre-1995 version of R.C. 3311.05
(defining county school district as all territory within a county that did not include any territory within a city or exempted village school district); R.C. 3311.05.11 (provisions where county only contained one local school district); and R.C. 3311.60 (providing that the board of education of county school district shall establish curriculum for all local schools under their control). Thus, by providing transfer of territory from a city school district to a county school district, the 1994 version of R.C. 3311.24 in effect when the petitions at issue here were filed included transfers of territory to local school districts. See,e.g., Levey v. State Board of Education (Feb. 28, 1995), Franklin App. No. 94APE08-1125, unreported (1995 Opinions 749) (affirming transfer from Toledo City School District to Ottawa Hills Local School District). As such, the Board had jurisdiction to consider appellants' petition.[2]
In their first assignment of error, appellants allege that the trial court abused its discretion by failing to give primary consideration to the present and ultimate good of the pupils concerned. Ohio Adm. Code 3301-89-01, which states thegeneral policies of the Board in a territory transfer determination, provides in section (F) that "[a] request for transfer of territory will be considered upon its merit with primary consideration given to the present and ultimate good of the pupils concerned." In essence, appellants argue that, pursuant to this rule, the trial court must first determine whether the transfer would be in the best interests of the students of the transfer area, and once having done so, determined whether any of the specifically enumerated factors in Ohio Adm. Code 3301-89-02(B) and 3301-89-03(B) warrant denial of the transfer. Appellants contend that the trial court did just the opposite when it stated that the interest of the students should be considered "only after balancing the many competing factors." (Decision at 12.) While we agree that the trial court's decision in this regard suggests a misunderstanding of the purpose of Ohio Adm. Code 3301-89-01(F), we also find that appellants themselves misconstrue the import of the rule.
First, contrary to what is suggested by appellants, consideration of the "present and ultimate good of the pupils concerned" is not limited to the interests of those students in the transfer territory. Rather, the inquiry involves all students affected by the proposed transfer, including those remaining in the relinquishing district and those already at the receiving districts. See Garfield Hts. City School Dist. v. State Bd. ofEdn. (1990), 62 Ohio App.3d 308, 323 ("[t]he referee in such a case is merely to decide whether, based upon all relevant factors, the proposed transfer would adversely affect the best interest ofall students involved, and whether it would indeed be in their best interest"). Thus, evidence that a transfer may be in the best interest of the students in the transfer area must be balanced against evidence of the potential harm such a transfer may have on the other students in the effected districts.
Second, consideration of the students' best interest is not a separate, independent factor per se. Rather, it is the general, underlying policy that guides the Board in its decision on whether to grant the transfer or not. This guiding policy, however, is not divorced from the enumerated factors specifically set forth in the Ohio Administrative Code but is reflected therein. See Garfield Hts, supra, at 320 ("[t]he `present and ultimate good of the pupils concerned' is to be viewed in context of all the factors set forth in Ohio Adm. Code 3301-89-02 and3301-89-03 as well as all other relevant factors which will have an impact on the proposed transfer"); see, also, Cincinnati CitySchool Dist. v. State Bd. of Edn. (1996), 113 Ohio App.3d 305, 310
(because the good of the pupils is the overriding consideration, no one factor alone is determinative of the transfer request). Thus, analysis of the enumerated factors are an "integral part" of the underlying policy of determining what is in the best interest of the students concerned. Garfield Hts, supra, at 319.
Finally, and more importantly, by arguing that the trial court failed to give primary consideration to the best interests of the pupils concerned, appellants improperly imply that the trial court's role is to engage in a reweighing of the competing factors and make such a determination. It is the duty of the Board, not the trial court, to weigh the competing factors to determine whether a transfer is in the best interest of the students involved. See Fairborn City School District v. StateBoard of Education (Oct. 24, 1996), Franklin App. No. 96APE04-416, unreported (1996 Opinions 4221, 4229-4230); see, also, GarfieldHts., supra, at 323. As further discussed in our analysis of appellants' second and third assignments of error, the trial court's role is limited to whether the Board's determination approving or denying the transfer was supported by reliable, probative, and substantial evidence and was in accordance with law. See Cincinnati City School District, supra, at 309-310.
Appellants' first assignment of error is not well-taken and is overruled.
In their second and third assignments of error, appellants directly challenge the determination of the trial court that the Board's decision was supported by reliable, probative, and substantial evidence and was in accordance with law. Appellants contend that the trial court failed to adequately review the factual record, made numerous factual determinations that could not be supported by the record, based its decision on grounds not relied upon by the Board, and based its decision on grounds not established by law.
R.C. 119.12 establishes the standard of review for a trial court upon an appeal from an order by the Board concerning a petition for the transfer of territory pursuant to R.C. 3311.24.Garfield Hts., supra, at 312. Under this standard, the trial court must affirm the Board's order if it is supported by reliable, probative, and substantial evidence and is in accordance with law. Id. In so doing, the trial court must review the record and conduct a limited weighing of the evidence. However "an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." Ohio Historical Soc.v. State Emp. Relations Bd. (1993), 66 Ohio St.3d 466, 471; see, generally, Gen. Motors Corp. v. Joe O'Brien Chevrolet, Inc.
(1997), 118 Ohio App.3d 470, 482-483.
Upon further appeal to this court, our role is to determine whether the trial court abused its discretion in finding that the administrative order was or was not supported by reliable, probative and substantial evidence and in accordance with law. Id.; see, generally, Samson v. State of Ohio, Board ofEducation (Aug. 13, 1998), Franklin App. No. 97APE12-1702, unreported (1998 Opinions 2849, 2853-2854). An abuse of discretion connotes more than an error of judgment; it implies a decision that is arbitrary or capricious, one that is without a reasonable basis or clearly wrong. Pembaur v. Leis (1982), 1 Ohio St.3d 89; Wise v. Ohio Motor Vehicle Dealers Bd. (1995), 106 Ohio App.3d 562,565; In re Ghali (1992), 83 Ohio App.3d 460, 466. On the question of whether the Board's order is in accordance with law, our review is plenary. See Gen. Motors Corp., supra, at 483.
As noted above, the referee appointed by the Board in this case analyzed the answers submitted by the respective school districts to the seventeen questions enumerated in Ohio Adm. Code3301-89-02(B) and the ten additional factors listed in Ohio Adm. Code 3301-89-03. Based upon this analysis, the referee ultimately recommended that the transfer be approved because the benefits of the transfer to the students in the Four Mile Area outweighed any perceived detrimental effect on the Cincinnati City School District. The Board, however, rejected this recommendation. In so doing, the Board enumerated four specific grounds in support of its decision: (1) that the students in the proposed transfer were being appropriately served by the Cincinnati City School District; (2) that the transfer would have a detrimental impact on the fiscal and educational operation of the Cincinnati City School District; (3) that maintenance of existing city school district boundaries is critical to the stability of such school districts; and (4) that the transfer would result in increased racial isolation.
The Board is not required to accept a referee's recommendation to grant or deny a requested transfer of territory. See Fairborn City School District, at 4228. However, when the Board rejects a referee's recommendation to approve the transfer, it must be presumed that only those specific grounds listed by the Board provided the basis for its decision and that other possible grounds (even if supported by some evidence) were rejected.
Thus, consistent with the general mandate that a trial court defer to an administrative agency's resolution of evidentiary conflicts, the trial court should limit its review to two basic questions. First, are the specified grounds for the Board's decision supported by reliable, probative, and substantial evidence? See Ohio Historical Soc., supra, at 471 ("[t]he agency's order survives the first prong of the common pleas court's review if the court finds that the evidence the agency relied on is indeed `reliable, probative, and substantial'"). (Emphasis added.) Second, are such grounds legally sufficient to support the Board's determination? In other words, are the reasons that the Board relied upon legally sufficient to overcome the uncontradicted evidence in support of the transfer. While this process involves a limited reweighing of the relevant evidence and factors, a trial court may not simply substitute its judgment for that of the Board.
Here, as evident from its decision as a whole, the trial court did not limit its inquiry to a determination of whether the grounds specified by the Board were supported by the factual record and legally sufficient to support the Board's determination to deny the transfer. Rather, the trial court placed itself in the role of the Board by engaging in a complete reweighing of the evidence and regulatory factors and by coming to its own, independent conclusion as to the propriety of the transfer, albeit
the same conclusion reached by the Board. Moreover, in so doing, the trial court specifically relied upon several additional grounds not relied upon by the Board that it found weighed against the transfer. For example, the trial court found that: (1) that the Forest Hills Local School District was at or near capacity and might have trouble with an influx of additional students; (2) that the tax revenues gained by Forest Hills amounted to a windfall; (3) that even if the transfer were allowed, the children would still be geographically isolated from the rest of Forest Hills Local School District; and (4) that the parents chose to move into the Four Mile Area knowing that it was within the Cincinnati City School District. Several of these findings directly contradict those of the referee. More importantly, none were relied upon by the Board in making its decision. Thus, by completely reweighing the factors and by relying on additional, independent grounds not forming the basis of the Board's decision, the trial court exceeded the scope of its review beyond that allowed by law and thereby abused of discretion. Cf. Diversified Benefit PlansAgency, Inc. v. Duryee (1995), 101 Ohio App.3d 495 (trial court commits abuse of discretion when it applies the wrong standard of review in an administrative appeal).
Moreover, to the extent that the trial court reviewed the Board's grounds in support of its determination, we find that the trial court abused its discretion in finding that the Board's decision was supported by reliable, probative, and substantial evidence and in accordance with law. As more fully explained below, only two of the four specified grounds (the fiscal and racial impact of the transfer) are legitimate factors weighing against the transfer in this case. However, the evidence only supports a finding that the fiscal and racial impact would be deminimis. As such, we find that neither of these grounds, alone or together, are legally sufficient to support the decision of the Board to deny the transfer.
As noted above, the first ground for the Board's decision to deny the transfer was that the students in the Four Mile Road Area were "presently being appropriately served by the Cincinnati City School District." We find, however, that such a conclusion is not supported by reliable, probative, and substantial evidence, and more importantly, is not a factor weighing against the transfer in this case.
Appellees maintain that the Board's conclusion in this regard is supported by the evidence concerning the educational opportunities available to the students through the Cincinnati City School District. In particular, appellees note that the Cincinnati City School District provides alternative and magnet schools, including Montessori and Paideia programs, unavailable in the Forest Hills School District. Appellees also note that ninety-five percent of its students at its college prepatory high school, Walnut Hills High School, go on to college.
The record indicates, however, that not everyone can take advantage of these opportunities. For example, only those students who pass a qualifying exam can attend Walnut Hills High School. Moreover, the record indicates that those students of the Four Mile Area who have taken advantage of alternative opportunities face formidable transportation problems. For example, one student who attended an alternative high school for its Paideia program, testified that he had to catch a bus at 6:20 a.m. for a thirty minute ride to the Walnut Hills area, where he would wait between fifteen and forty-five minutes for a second bus that would take him to his high school. At the end of the day, the bus would drop him off approximately one mile away from home and he would have to walk home along a busy street without sidewalks. It took him approximately one hour and forty-five minutes to get home from school. Similarly, another parent testified that her child rode the bus one and one-half hours each way to attend a classroom for multi-handicapped students in the first and second grade. Almost every parent who testified about sending their students to a school other than that assigned to the Four Mile Area expressed dissatisfaction with the transportation provided by the Cincinnati City School District. And no parent of any child who had attended an alternative school testified to the contrary.[3]
More importantly, the Board's conclusion that the Cincinnati City School District is "appropriately serving" the students in the transfer area is, at best, a neutral factor in deciding whether to grant or deny a transfer. While the Board's conclusion in this regard renders petitioners' request for a transfer less compelling than a conclusion that the Cincinnati City School District was inadequately serving the students, such a conclusion does not, itself, affirmatively weigh against approving the transfer. Nothing in R.C. 3311.24, Ohio Adm. Code 3301-89, or the case law indicates that a transfer must be predicated on the inadequacies of the present school district, and nothing indicates that a transfer should be denied as long as the present school district is "appropriately serving" the affected students. The relevant inquiry is not limited to the appropriateness of the present school district, but must also include whether such students would be better served by the receiving district. Simply put, the fact that the students of the Four Mile Area are "appropriately served" by the Cincinnati City School District does not weigh against the transfer if the students would be better served in the Forest Hills School District.
Here, the evidence overwhelmingly indicates that the students would be better served by the transfer, especially considering the social and community factors. As this court has noted before, "it is appropriate for the board to consider boththe social and educational needs of all affected students" and that promoting a "sense of community" is a valid ground for seeking and granting a transfer. (Emphasis added.) Garfield Hts.,supra, at 323; see, also, Levey v. State Bd. of Education (Feb. 28, 1995), Franklin App. No. 94APE08-1125, unreported (1995 Opinions 749) (evidence that transfer would have a positive effect upon students who wished to participate in co-curricular and extracurricular activities in the neighborhood supported transfer). Here, the referee found that these social, extracurricular factors could not be ignored and weighed strongly in favor of a transfer:
 * * * To live in Anderson Township with recreational facilities, municipal programs, city services, shopping, churches, cultural activities, etc., associated with the Anderson Township community, but to travel to the City of Cincinnati for educational services is an unnecessary inconsistency. * * *
* * *
 * * * Lasting friendships are also formed through clubs, sports, and extracurricular activities. However, because of extreme inconvenience associated with the lengthy distances and travel times to Cincinnati Public Schools, the Four Mile area students not only are deprived of meaningful interaction with students while attending Cincinnati Public Schools, but they also face isolation and are denied the opportunity to develop full relationships with their Anderson Township neighbors. [Referee's Report at 39-41.]
Nothing in the Board's resolution, including finding that the Cincinnati City School District appropriately serves the students of the Four Mile Area, addresses, let alone contradicts, the referee's conclusion that the Four Mile Area students would be better served if the transfer were approved. Thus, we find that the Board's conclusion that the Four Mile Area students are being appropriately served by the Cincinnati City School District is not supported by reliable, probative, and substantial evidence and does not weigh against the transfer in this case.
The Board's second ground for denying the transfer was that the "loss of valuation in the requested transfer area would have a detrimental impact on the fiscal and educational operation of the Cincinnati City School District." The evidence, however, indicates that the annual loss in revenue to the Cincinnati City School District if the transfer were approved equals approximately $422,000, an amount constituting thirteen one hundredths of one percent of the district's over $300 million annual budget. While John Concannon, the general counsel for the Cincinnati City School District, testified that such an amount was significant, especially considering the "discretionary" portion of the annual budget, he did not describe, in any detail, how the loss of this comparatively limited amount of money would detrimentally impact the educational operation of the Cincinnati City School District. Thus, despite Concannon's conclusory testimony to the contrary, we find that evidence shows that the fiscal impact can, at best, be described as minimal.
The Board's third stated reason was "that maintenance of city school districts boundaries is critical to the stability of such school districts in order to assure successful long-range planning and to avoid substantive harm to the relinquishing city school district." We find, however, that such a vague and general statement is not a legally valid reason to denying a transfer in this case.
We have recognized that the Board is entitled to consider all relevant factors, not merely the factors listed in Ohio Adm. Code 3301-89, see Fairborn City School District, supra, at 4227. However, the factors considered by the Board must not be inconsistent with the purpose of R.C. 3314.24 or the specific provisions of Ohio Adm. Code 3301-89. The entire purpose of the transfer process is to determine whether and when to alter school district boundaries, and nothing in R.C. 3311.24 or Ohio Adm. Code 3301-89 indicates that maintaining existing city school district boundaries is, itself, a factor weighing against a transfer. In fact, the only related provision, Ohio Adm. Code 3301-89-03(B)(7), provides that long standing school boundaries should not be changed "if substantial upheaval results because of long-heldloyalties by the parties involved." (Emphasis added.) Here, there was no indication in the Board's resolution or in the evidence that the residents of the Four Mile Area have long-held loyalties to the Cincinnati City School District.
More importantly, Ohio Adm. Code 3301-89-01(F) mandates that each transfer request is to be "considered upon its merit." (Emphasis added.) Thus, a decision to grant or deny a transfer must be based on the specific facts and circumstances surrounding the proposed transfer itself and not a general presumption against changing city school district boundaries. Nothing in the Board's resolution here indicates how the maintenance of the boundaries of the Cincinnati City School District, in general, or those specifically at issue here, are critical to the district's stability, long-run planning, and avoidance of substantial harm.
Finally, the Board's fourth stated reason in support of its decision was that the "transfer would result in an increase of racial isolation." We find, however, that the evidence only supports a conclusion that such an impact would be de minimis. It is uncontroverted that: (1) according to the 1995-1996 Cincinnati City School District, the Cincinnati City School District had a minority percentage of 70.95%; (2) that a transfer of the twenty non-minority students from the Five Mile Area would result in an increase in the minority percentage at the Cincinnati City School District to 70.978%, an increase of only .028%; and (3) that the minority student percentage attending the Cincinnati City School District has increased by more than one percent per year and that this trend is likely to continue into the foreseeable future. Thus, as the referee pointed out, the racial impact to the Cincinnati City School District of granting the transfer is over thirty-nine times less than the annual trend.
The trial court, apparently recognizing the de mininis
racial effect of the proposed transfer, found that the racial impact had the potential to be greater because of the possibility of future development in the Four Mile Area. Under this analysis, the Four Mile Area would continue to develop and, therefore, would likely contain more than twenty non-minority students in the future. However, the evidence does not support such a conclusion. The only witness to testify, based upon personal knowledge as to the potential for future development in the Four Mile Area, was JoAnne Schreiner, one of the petitioners. Schreiner testified that future development in the proposed transfer area was limited because most of the undeveloped land was unsuitable for building because of its topography and because much of it was owned by the Archdiocese of Cincinnati or governmental entities such as the Anderson Township Greenbelt Committee and Hamilton County Library. She testified that there were only eight-to-ten vacant lots in her subdivision. While John Concannon testified that the area was one in which "a number" of homes were being built, he based this opinion on what he believed he had heard in the prior testimony at the hearing and not due to any personal knowledge. More importantly, the trial court's conclusion as to the racial impact of such development is premised on pure speculation as to the racial makeup of the area in the future. Thus, there is no evidence that future development of the Four Mile Area would result in a greater racial impact. In sum, the Board's finding that transfer would result in other than a de minimis increase of racial isolation is not supported by reliable, probative, and substantial evidence and the trial court abused its discretion in so finding.
As the above analysis indicates, the four stated grounds relied upon by the Board cannot support its decision to deny the transfer in this case. We find that the de minimis racial effect, a minimal fiscal effect, a neutral conclusion concerning the adequacy of the Cincinnati School District, and an invalid presumption against altering city school district boundaries do not, as a matter of law, provide a legally sufficient basis to deny the transfer in this case. As a result, we find appellants' second and third assignments of error to be well-taken and sustained. We reverse the decision of the Franklin County Court of Common Pleas and remand the matter to that court with instructions to vacate its earlier decision affirming the decision of the State Board of Education and to enter judgment reversing the decision of the State Board of Education and ordering that the transfer be approved.
Judgment reversed and remanded with instructions.
DESHLER and TYACK, JJ., concur.
[1] While appellants contend that appellees have failed to preserve their jurisdictional argument by failing to file a cross-appeal raising a separate assignment of error, we disagree. By raising the jurisdictional argument, appellees did not seek to change or alter the judgment below. Rather, they seek to defend the final judgment below on alternative grounds and, as such, appellees were not required to file a cross-appeal. See App.R. 3.
[2] We note that since 1995, county school districts are now referred to as educational service centers, see R.C. 3311.05, and that the present version of R.C. 3311.24 reflects this change of designation.
[3] In fact, only two parents testified in opposition to the transfer. One was a teacher in the Cincinnati City School District, the other was the spouse of a teacher in the district. Both parents testified that they were happy with the education their children were receiving in the Cincinnati City School District. Both also indicated, however, that they expected that their children would attend Walnut Hills High School, the college preparatory high school reserved for top performing students.