OPINION
{¶ 1} Appellant-appellant, Fumiyo Shida Witt, R.Ph., appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee-appellee, Ohio State Board of Pharmacy ("board"), that found appellant, on two separate occasions, violated R.C. 2925.03(A) and2925.23(B). Based on that finding, the board concluded appellant was guilty of unprofessional conduct in the practice of pharmacy pursuant to R.C. 4729.16(A)(2) and of willfully violating or attempting to violate R.C. Chapter 2925 as provided in R.C. 4729.16(A)(5). Because the board's order both is supported by substantial, reliable and probative evidence and is in accordance with law, we affirm.
 {¶ 2} By Notice of Opportunity for Hearing dated September 12, 2002, the board notified appellant pursuant to R.C. Chapters 119 and 4729 that she was entitled to a hearing before the board regarding allegations that on July 18, 2001 and on September 13, 2001 she was presented with prescriptions for Vicodin and Hydrocodone, respectively, that obviously were forged, and she on both occasions dispensed drugs that were not prescribed, in violation of R.C. 2925.03(A) and then filed the prescription in the pharmacy records, in violation of R.C. 2925.23(B). The notice further advised that each of the alleged violations, if proven, constituted unprofessional conduct and willful violations of provisions of R.C. Chapter 2925 within the meaning of Section 4729.16 of the Ohio Revised Code.
 {¶ 3} Pursuant to appellant's request, a hearing was held before the board. According to the evidence, Len Mudra, a field agent for the board, received a telephone call on March 14, 2002 from Detective Gregg Whitney of the Cleveland Police Department. Whitney stated he had arrested "a male name Joe Robinson for an illegal processing of drug documents. When Detective Whitney called [Mudra], he said, `you have got to see these scripts.'" (Tr. 5.) Mudra went to the narcotics unit, looked at the first prescription, and decided to visit Marc's Pharmacy on Lorraine Avenue in Cleveland, the store that filled the prescription. Mudra spoke to appellant, the responsible pharmacist, and showed her the prescription. After looking in the files, he found other prescriptions.
 {¶ 4} The first prescription, the subject of Whitney's call, was written for Motrin and Flexeril, both non-controlled substances. Someone, however, altered the script. Above the writing prescribing Motrin, the person wrote in Vicodin, which he or she spelled "Vikadon, 750 ng#." To the right of the drug and strength was written the number 60, and to the right of it, "Sixty." The prescription presents a number of discrepancies. Initially, Vicodin is squeezed into the top portion of the prescription, and the strength is written in blurred numbers. Not only is the handwriting significantly different from that prescribing Motrin and Flexeril, but, unlike Motrin and Flexeril which each has its respective directions for use, the Vicodin has none. Further, while the Motrin prescription is written for "30 (thirty)" and the Flexeril is written for "10 (ten)," the Vicodin is written for "60 Sixty." In addition, as questioning from the board disclosed, the prescription violates Ohio law in that it combines a controlled substance, Vicodin, with non-controlled substances on the same prescription.
 {¶ 5} At the hearing, appellant admitted the prescription appears to be a forgery, but stated that at the time she filled it she did not notice the difference in handwriting. When a board member inquired about the legality of including controlled and non-controlled substances in the same prescription, appellant stated she did not know such a combination was a problem at the time she filled the prescription, though she was aware of the problem by the time of the board hearing; she explained she was not sure when she became aware of the principle. Looking at the first prescription, appellant admitted only one controlled substance could be on a prescription, and the prescription violated that principle by including two non-controlled substances with the controlled substance Vicodin.
 {¶ 6} The second prescription, dated September 13, 2001, was written for "HYDROCODONE/APAP 5/500 TAB." (State's Exhibit 3.) The prescription was typed, including the number of tablets to be dispensed: "#15 tablets." To the right of the number of tablets to be dispensed was handwritten in black ink, matching that of the doctor's signature, the word "(Fifteen)." The typewritten number 15 on the prescription was darkened and above it, in blue ink, was written the number 60. The "(Fifteen)" was neither crossed out nor deleted. Appellant filled the prescription, testifying she did not notice the difference in the color of ink or the "Fifteen" written in parentheses. At the hearing, appellant stated that, had she noticed the discrepancy, she would not have filled the prescription.
 {¶ 7} With that evidence, the board determined appellant violated both R.C. 2925.03(A) and 2925.23(B) on July 18, 2001, in filling the prescription for Vicodin when it was not prescribed, and again on September 13, 2001, in dispensing 60 Hydrocodone tablets when 15 were prescribed. The board further concluded that such conduct constituted unprofessional conduct in the practice of pharmacy under R.C. 4729.16(A)(2) and further constituted willfully violating, conspiring to violate, attempting to violate, or aiding and abetting the violation of provisions of R.C. Chapter 2925, in violation of R.C. 4729.16(A)(5). Based on those conclusions, the board imposed a monetary penalty of $1,000 and placed appellant on probation for a period of one year.
 {¶ 8} Appellant appealed to the common pleas court pursuant to R.C. 119.12, essentially arguing the board's order is not supported by substantial, reliable and probative evidence and is not in accordance with law. By decision and entry of February 24, 2006, the common pleas court remanded the matter to the board with instructions to clarify and expound on its findings of fact. Specifically, the common pleas court asked the board to address whether the board found appellant was aware on the two occasions at issue that she was probably selling drugs in a manner not in accordance with the relevant Revised Code provisions and whether she was aware she was probably in possession of a false or forged prescription on that date.
 {¶ 9} The board issued a supplemental opinion. In it, the board acknowledged appellant's testimony that she was under a good deal of stress in filling a high number of prescriptions in the pharmacy, but the board determined the number was manageable. The board further acknowledged appellant's and Mudra's testimony that appellant simply made a mistake in filling the two prescriptions. The board, however, found "this testimony incredible, does not believe this testimony, and discounts this testimony." As a result, the board found appellant was aware on July 18, 2001 both that she was selling 60 Vicodin tablets in a manner not in accordance with law and that she was in possession of a forged or false prescription. Similarly, the board concluded she was aware on September 13, 2001 both that she was selling 60 Hydrocodone tablets in a manner not in accordance with law and that she was in possession of a false or forged prescription.
 {¶ 10} Based on the board's supplemental opinion, and following supplemental briefing, the common pleas court affirmed the board's order. Appellant appeals, assigning two errors:
 1. The Common Pleas Court erred when it held that there was reliable, probative, and substantial evidence in the record to support the Board's finding that Fumiyo Witt was guilty of unprofessional conduct in the practice of pharmacy, as defined by R.C. 4729.16(A)(2), and was guilty of willfully violating, conspiring to violate, attempting to violate, or aiding and abetting the violation of Chapter 2925 of the Revised Code, in contravention of R.C. 4729.16(A)(5). 2. The Court of Common Pleas erred when it held that the Board could reasonable [sic] use circumstantial evidence presented at the hearing to conclude that Fumiyo Witt acted knowingly and/or willfully.
 {¶ 11} Because appellant's assignments of error are interrelated, we address them jointly. Together they assert, as argued in the common pleas court, that the board's order is not supported by substantial, reliable and probative evidence and is not in accordance with law.
 {¶ 12} Under R.C. 119.12, when a common pleas court reviews an order of the administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111. The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Provisions Plus, Inc. v. Ohio Liquor ControlComm., Franklin App. No. 03AP-670, 2004-Ohio-592, at ¶ 7, quotingLies v. Veterinary Med. Bd. (1981), 2 Ohio App.3d 204. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Conrad, supra.
 {¶ 13} By contrast, an appellate court's review is more limited.Provisions Plus, citing Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619. The appellate court determines whether the trial court abused its discretion. Id. Absent an abuse of discretion, the appellate court may not substitute its judgment for that of the administrative agency or the common pleas court. Id. An appellate court, however, has plenary review of purely legal questions. Id.
 {¶ 14} The board found appellant violated R.C. 2925.03(A) and2925.23(B) in filling each of the two prescriptions at issue. R.C. 2925.03(A), as relevant here, provides that no person shall knowingly either sell or offer to sell a controlled substance. R.C. 2925.23(B), as relevant here, provides that no person shall knowingly possess a false or forged prescription.
 {¶ 15} The first issue to be resolved under appellant's assignments of error is whether the common pleas court abused its discretion in concluding the record includes substantial, reliable and probative evidence that appellant violated each of those sections in filling the forged prescriptions at issue. As appellant framed the issue, "[t]his case presents the issue of what constitutes reliable, probative, and substantial evidence that the appellant acted knowingly and/or willfully." (Appellant's brief, 5.) Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Although appellant admits she made a mistake in processing the two forged prescriptions, she contends the evidence falls short of demonstrating she acted knowingly.
 {¶ 16} The board's supplemental order is more instructive than its original order in explaining the board's rationale for concluding appellant acted knowingly. Specifically, the board's supplemental opinion observes that pharmacists are required to pass both a clinical examination and a jurisprudence examination before they become licensed to practice pharmacy. Moreover, pharmacists every three years must submit evidence of three hours of continuing education on board-approved pharmacy jurisprudence. Accordingly, the board found disturbing appellant's claim she was unaware she could not fill a prescription that included controlled substances with non-controlled drugs.
 {¶ 17} Although acknowledging the high volume of prescriptions at the particular pharmacy involved, the board noted the volume was not unmanageable. As the board stated "[e]ven when working in a busy store, pharmacists see the actual prescriptions they fill and it would be impossible to look at these prescriptions and fail to recognize such crude forgeries." Indeed, Mudra testified at the hearing that "they stood out so much — the prescriptions. It was obvious that they were forged." (Tr. 11.) As the board observed, pharmacists necessarily review the face of the prescription in order to fill it, and appellant clearly did so here because she inserted the missing directions for use on the Vicodin prescription.
 {¶ 18} Acknowledging appellant's contention that she simply made a mistake, the board explained it did not find the testimony credible, because appellant's admission of more than a mistake could end her career as a pharmacist. Further, while the board deemed Mudra's testimony to be sincere, the board concluded "he lacks the training and experience to base credible testimony on a pharmacist's state of mind," especially when appellant's actions were "contrary to what is known by the Board to be mandated knowledge of [appellant] and every other practicing pharmacist."
 {¶ 19} As the board concluded, the nature of the forgeries in this case presents substantial, reliable and probative evidence that appellant acted knowingly. In processing the July prescription, appellant (1) ignored the principle that a controlled substance may not be included in a prescription with non-controlled substances, (2) ignored the different handwriting, the misspelled "Vicodin" and "mg.," and the difference in form from the other drugs prescribed in terms of the number of Vicodin to be dispensed, and (3) affirmatively added directions for use of the controlled substance that was squeezed onto the prescription for non-controlled substances. Were the forgery less blatant, appellant's contentions would be more persuasive.
 {¶ 20} Similarly, the September prescription is so obviously forged that the board could conclude appellant acted knowingly. On a typewritten prescription, the original quantity is obliterated and a new quantity is substituted in handwritten blue ink, while the only other handwriting on the prescription is in black ink. If the handwritten number were not enough to flag a forgery, the doctor's handwritten "(Fifteen)" to the right of the originally prescribed number not only was untouched, but also was written in black ink. In view of such blatant forgery, the board properly concluded appellant was aware she was filling a forged prescription.
 {¶ 21} The remaining issue is whether appellant acted willfully. R.C. 4729.16 permits the board to impose a monetary penalty and place a pharmacist on probation if the board finds the pharmacist "[g]uilty of willfully violating, conspiring to violate, attempting to violate, or aiding or abetting the violation of any of the provisions of * * * Chapter 2925. * * * of the Revised Code * * *" R.C. 4729.16(A)(5).
 {¶ 22} "The Committee Comment to R.C. 2901.22, which defines culpable mental states for Ohio crimes, equates a willful act with one done purposely; that is, one done with a specific intention to cause a certain result." Ohio State Bd. of Pharmacy v. Poppe (1988),48 Ohio App.3d 222, 227. Willfulness "involves the element of malice or ill will, but it is not necessary to show actual malice or ill will. It may be shown by indifference to the safety of others after knowledge of their danger, or failure after such knowledge to use ordinary care to avoid injury." Payne v. Vance (1921), 103 Ohio St. 59, paragraph three of the syllabus. Thus, willfulness "is not shown by proving the simple violation of a statute or ordinance unaccompanied by the intent or purpose to do injury after knowledge of danger, or failure after such knowledge to use ordinary care to avoid injury." Id. at paragraph six of the syllabus.
 {¶ 23} Here, the evidence demonstrates more than a simple violation of a statute or ordinance; the evidence shows forgeries so obvious that the board concluded appellant knew they were forgeries. Nonetheless, appellant, in what may be deemed indifference to the safety of others, not only filled the prescription, but in one instance inserted directions for use that accompanied the obvious forgery. The common pleas court did not abuse its discretion in finding the board's order is supported by substantial, reliable and probative evidence when appellant, despite numerous indications of forgery, filled the forged prescriptions and distributed the drugs unlawfully to the detriment of the recipient. See, e.g., Vogelsong v. Ohio State Bd. of Pharmacy (Sept. 30, 1997), Scioto App. No. 97CA2497 (finding willfulness from sheer volume of prohibited dispensations despite pharmacist's alleged ignorance of the law). To the extent appellant contends the circumstantial evidence is insufficient to prove her mental state, the Ohio Supreme Court held that "circumstantial evidence and direct evidence inherently possess the same probative value." State v.Biros (1997), 78 Ohio St.3d 426, 447, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus.
 {¶ 24} Accordingly, appellant's two assignments of error are overruled and the judgment of the common pleas court is affirmed.
Judgment affirmed.
SADLER and McGRATH, JJ., concur.